775 P.2d 120

**Gordon GRIGGS and Doris Griggs, husband and wife, Plaintiffs,**

**v.**

**Charles E. NASH and Tina E. Nash, husband and wife; Equity Mortgage Services, Inc.; Mortgage Services Escrow; Rick L. VanGelder and Jane Doe VanGelder, husband and wife; John Does No. 1–5; First American Title Insurance Company; United States of America, by and through the Internal Revenue Service; State of Idaho, by and through the Department of Revenue and Taxation; Julie J. Anselment; Bruneel Tire Service; American Carpet Cleaners; Dennis Allen; Tina E. Nash; First Security Bank of Idaho; Coleman Oil Company, Defendants.**

**EQUITY MORTGAGE SERVICES, INC.; Mortgage Services Escrow; and Rick L. VanGelder, Third–Party Plaintiffs–Appellants,**

**v.**

**Kim TROUT, Third–Party Defendant–Respondent.**

No. 17637.

Supreme Court of Idaho.

May 24, 1989.

Quane, Smith, Howard & Hull, Boise, for appellants. W. Scott Wigle, argued.

Clements, Brown & McNichols, Lewiston, for respondent. Michael McNichols, argued.

JOHNSON, Justice.

This is an action against an attorney seeking indemnity or contribution based on an alleged breach of a fiduciary relationship and negligence. The primary issue presented is whether the two-year statute of limitations contained in I.C. § 5–219(4) had run before the action against the attorney was commenced. The trial court ruled that the statute had run. The trial court also awarded attorney fees to the attorney pursuant to I.C. § 12–120(3). We affirm both decisions of the trial court.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Equity Mortgage Services, Inc. (EMSI) of Spokane, Washington, brokers private real estate loans. Charles and Tina Nash owned a house located on 10 acres near Lewiston, Idaho (the property). In March 1984 the Nashes sought the assistance of EMSI to obtain a loan on the property. In the spring of 1984 Gordon and Doris Griggs contacted EMSI indicating their desire to make a loan secured by real property. EMSI arranged for a loan of $35,000 (the loan) to be made by the Griggses to the Nashes. The loan was to be secured by a deed of trust on the property. This deed of trust was to have priority over any other encumbrance or lien on the property. Before the loan was closed, EMSI through Rick Van Gelder, its sole owner and manager, represented to the Griggses that the property had a value of at least $65,000.

When it came time to close the loan in May 1984, Van Gelder prepared the necessary documents for signature by the Nashes and the Griggses. At the request of EMSI, the Nashes obtained a title report listing the liens and encumbrances on the property. EMSI made arrangements with

Kim Trout, an attorney in Lewiston, Idaho, to pay off an existing escrow contract relating to the property and to release the net proceeds of the loan to the Nashes when the deed of trust securing the loan had been recorded. Trout paid off the existing escrow contract, recorded the deed of trust, and disbursed the net proceeds of the loan to the Nashes.

Monthly interest payments were due on the loan beginning in June 1984. The principal amount of the loan was due in May 1986. The Nashes made no payments on the note. Also, certain liens on the property were discovered to have priority over the deed of trust securing the loan. One of these was a lien by the State of Idaho for unpaid taxes of the Nashes in the amount of $186.70.

On October 4, 1984, Van Gelder wrote to the Griggses stating that at the time of the closing EMSI had employed Trout to disburse the funds to clear the property and to put the Griggses "in the first position on the property." Van Gelder also advised the Griggses that at the time of the closing Trout was representing the Nashes on a prior sale of the property that had required a foreclosure and that Trout "did not make anyone aware of that pending litigation or of any other things regarding the property that he had prior knowledge of." Van Gelder indicated that EMSI had hired an attorney to prepare a claim against Trout and the title company.

On October 11, 1984, an attorney representing the Griggses wrote to EMSI demanding that EMSI pay the Griggses the principal amount of the loan, plus interest. The letter stated that EMSI had breached the fiduciary relationship that EMSI had with the Griggses "by failure to insure proper disbursements of their funds."

On November 2, 1984, Van Gelder wrote to the attorney for the Griggses requesting an assignment of the note and deed of trust signed by the Nashes to allow EMSI to take action against Trout. The letter noted that EMSI had "already incurred approximately $1,500.00 in attorney's fees for the work done." Van Gelder proposed that EMSI would execute a promissory note to the Griggses for the amount owed on the loan and would forward it to the attorney for the Griggses together with an assignment of any award against Trout.

On July 30, 1985, the Griggses filed the complaint in this action making claims against the Nashes, EMSI and its subsidiary Mortgage Services Escrow, Van Gelder and his wife, the title company, and various parties alleged to hold liens on the property. One of the lien holders named was the State of Idaho. The complaint alleged that EMSI and Van Gelder had failed to (1) investigate the financial position of the Nashes, (2) inspect the property, (3) obtain an independent appraisal or other evidence of the value of the property, and (4) examine the title to the property to determine whether the deed of trust given to the Griggses would be a valid first lien. This complaint was served on EMSI and Van Gelder on August 5, 1985.

On January 29, 1987, EMSI and Van Gelder filed a motion for leave to file a third-party complaint against Trout. The third-party complaint was filed on September 23, 1987. It alleged that Trout had acted as the attorney for EMSI and Van Gelder in closing the loan transaction between the Griggses and the Nashes. EMSI and Van Gelder sought indemnification or contribution from Trout for any damages that might be awarded against them in favor of the Griggses. They alleged that Trout had breached fiduciary duties owed to them by failing, among other things, to advise them of Trout's knowledge of the value of the property. They also alleged that Trout had been negligent in failing to clear all prior liens from the title to the property.

Trout filed a motion for summary judgment on the ground that the claims against him by EMSI and Van Gelder were barred by the two-year statute of limitations in I.C. § 5–219(4). For the purposes of the motion, Trout admitted that it must be taken as true that (1) EMSI engaged Trout to handle the Nash loan closing, (2) Trout knew of a lawsuit affecting the property and of an appraisal valuing the property at less than EMSI believed it to be worth, and (3) if Trout had disclosed the lawsuit and the appraisal, EMSI would have foregone the loan to the Nashes.

In ruling on the motion for summary judgment, the trial court stated that the issue to be decided was: "what is the applicable limitation period for an action seeking indemnification for potential liability of one party, allegedly caused by the professional malpractice of another?" The trial court ruled that the gravamen of the third-party complaint was legal malpractice and that I.C. § 5–219(4) applied. In granting summary judgment, the trial court held that EMSI suffered damage as a result of Trout's alleged malpractice at least by November 2, 1984, which was more than two years before EMSI and Van Gelder moved for leave to file a third-party complaint. The trial court also awarded Trout attorney fees pursuant to I.C. § 12–120(3), which became effective in 1986. The trial court reasoned that this statute was in force when EMSI and Van Gelder sought leave to file the third-party complaint and that it was not retroactively applied. The judgment was certified by the trial court as final pursuant to I.R.C.P. 54(b), and EMSI and Van Gelder appealed.

After the appeal was filed, the claims of the Griggses against EMSI and Van Gelder were tried. The trial court found that (1) Van Gelder was negligent in his investigation of the property and erroneously informed the Griggses that the property was worth $65,000, (2) the loan was made solely on the basis of the value of the property represented by Van Gelder, and (3) Van Gelder represented that the security interest of the Griggses in the property would be first in line, when, in fact, there was a tax lien of $186.70 that had priority over theirs. The trial court granted judgment against EMSI and Van Gelder for their damages, interest and attorney fees. Judgment was granted against Mortgage Services Escrow for $186.70, because of the tax lien.

## II.

**THIS IS AN ACTION BASED ON PROFESSIONAL MALPRACTICE AND IS SUBJECT TO THE STATUTE OF LIMITATIONS CONTAINED IN I.C. § 5–219(4).**

Trout asserts that this is an action for professional malpractice. EMSI and Van Gelder contend that it is an action for indemnity or contribution. We hold that this is an action for professional malpractice, not an action for indemnity or contribution.

The third-party complaint is drawn in the form of an action for indemnity or contribution. It alleges that the liability of EMSI and Van Gelder to the Griggses, if any, resulted from the acts or omissions of Trout. It alleges that Trout's breaches of his fiduciary duty and/or his negligence were the proximate cause of the damages. However, the claims in the third-party complaint are not based on any of the theories upon which the right to indemnity or contribution may be made. The only basis for the claims is Trout's alleged malpractice in his representation of EMSI and Van Gelder.

This Court has stated that "the right of indemnity . . . refers to those situations where a person who without fault on his part is compelled to pay damages occasioned by the negligence of another." *May Trucking Co. v. International Harvester Co.*, 97 Idaho 319, 543 P.2d 1159 (1975). The following are examples of the theories upon which the party seeking indemnity may base a claim:

(1) The indemnitee may claim that his liability was based on passive neglect, while the indemnitor was guilty of recklessness.

(2) The indemnitee owed only a secondary duty to the injured party while the indemnitor was primarily responsible, as in cases where a municipal corporation has the primary duty to keep the streets in safe condition and the landowner has a secondary duty.

(3) The indemnitee may be only vicariously liable for the actual negligence of his employee and seek indemnity. These are the agency cases.

97 Idaho at 321, 543 P.2d at 1161.

The claims of EMSI and Van Gelder against Trout are not supported by any of these theories. They do not allege that

Trout was guilty of recklessness nor do they allege that Trout had a primary duty to the Griggses in closing the loan. Also this is not a case of vicarious liability. EMSI and Van Gelder allege only that Trout breached fiduciary duties owed to them and was negligent during the course of his representation of them. There is no allegation that Trout had any contact or dealings with the Griggses or had any duty to them. In sum, there is no basis in the third-party complaint for an indemnity action against Trout.

■ The claims of EMSI and Van Gelder also do not constitute claims for contribution. Recently, we have pointed out that "contribution is a form of indemnity," with contribution meaning a sharing of loss, and indemnity meaning a shifting of the entire loss. *Chenery v. Agri–Lines Corporation*, 115 Idaho 281, 766 P.2d 751, 754 (1988). Under I.C. § 6–803, contribution exists only between joint tortfeasors. No duty of Trout to the Griggses is asserted here. The only duties that are alleged in the third-party complaint are those of Trout to EMSI and Van Gelder. It is not asserted that Trout was a tortfeasor as to the Griggses. Therefore, Trout would have no obligation to contribute as a joint tortfeasor.

We find support for the rationale of our decision on this issue in *Muir v. Hadler Real Estate Management Co.*, 4 Ohio App.3d 89, 446 N.E.2d 820 (1982). There a tenant brought action against his landlord seeking to recover damages resulting from an allegedly wrongful eviction. The landlord filed a third-party complaint against his attorney, asserting that the attorney was liable for mishandling the eviction proceeding. The attorney filed a motion for summary judgment on the ground that the claim against him was barred by the statute of limitations for attorney malpractice. The landlord contended that the claim was predicated upon indemnification, rather than malpractice. In rejecting the landlord's contention, the court said:

> An action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of [the statute of limitations for malpractice], regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages. This is not a true case of primary-secondary liability, with the person secondarily liable having paid the claim and seeking indemnification from the person primarily liable, inasmuch as an attorney is not liable to third persons for damages arising from the performance of the attorney's professional activities on behalf of, and with the knowledge of, his client, even though the client may become liable because of the attorney's activities. [Citation omitted.]
>
> Malpractice by any other name still constitutes malpractice.

*Id.*, 446 N.E.2d at 822.

Because this is an action for professional malpractice, I.C. § 5–219(4) is the applicable statute of limitations. This statute provides that an action to recover damages for professional malpractice must be commenced within two years.

### III.

### THIS ACTION ACCRUED WHEN EMSI AND VAN GELDER WERE DAMAGED.

Having resolved that I.C. § 5–219(4) is the applicable statute of limitations in this case, we must then determine when the action accrued. The statute provides that actions for professional malpractice accrue "as of the time of the occurrence, act or omission complained of." If we were to apply the statute strictly, the claims of EMSI and Van Gelder against Trout would clearly be barred. The alleged acts or omissions of Trout occurred in May 1984. Since the third-party complaint was not filed until September of 1987, the statute would bar the claims. However, in *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985), this Court extended the date for the accrual of actions for professional malpractice where the negligence is continuing, until the date that damage occurred.

In *Streib,* an accountant had negligently prepared income tax returns for taxpayers, claiming certain deductions that were not allowable. The taxpayers filed an action against the accountant more than two years after the last return was prepared. The accountant moved for summary judgment on the basis of I.C. § 5–219(4). This Court held that the action for professional malpractice accrued when the Internal Revenue Service assessed the taxpayers for penalties and interest due to the deductions that were not allowable. The Court characterized the negligence of the accountant as "continuing in nature until [the taxpayers] suffer damage." 109 Idaho at 179, 706 P.2d at 68. The assessment by the IRS was considered by the Court to be the date when damage to the taxpayers occurred. The taxpayers were allowed two years after that date within which to file their action against the accountant.

Here, the trial court found that EMSI and Van Gelder had suffered damage as a result of Trout's alleged malpractice by at least November 2, 1984—the date of Van Gelder's letter to counsel for the Griggses stating that EMSI had incurred approximately $1,500 in attorney fees in preparing to file an action against Trout. From reviewing the record, we are uncertain whether this proposed action was based only on the fact that the recorded deed of trust from the Nashes to the Griggses did not have priority over other liens on the property, or whether it was also based on Trout's alleged failure to inform EMSI about the appraisal of the property at $31,800. The letter of October 4, 1984 from Van Gelder to the Griggses states:

> When we closed our loan, we employed the services of an attorney by the name of Kim Trout in Lewiston to disburse the funds to clear the property and put you in the first position on the property. We paid the funds over to him in Trust and he assured this office that he would do as we requested.
>
> As it turns out, Mr. Trout was representing Mr. Nash on a prior sale of the property that was foreclosed. Mr. Trout

did not make anyone aware of that pending litigation or of any other things regarding the property that he had prior knowledge of.

> As it stands now, we have hired an attorney in Lewiston who is preparing a claim against Mr. Trout as well as the title company to recover the funds. We are paying the costs of that. The procedure is to submit a claim to Mr. Trout's malpractice insurance company. Hopefully this will resolve the whole thing quickly.

In his deposition, Van Gelder was asked what Trout did or failed to do that he should have done to ensure that the loan was closed properly. He answered: "Normal procedure is when you record a Deed of Trust you don't disperse funds—any funds until you have the date down, endorsement showing your Deed of Trust recorded and your title dated down." Van Gelder also stated that when Trout wanted to disburse the funds to the Nashes, he asked Trout if the title had been cleared and that Trout said: " 'Yes, you're in the first position on the property.' "

In considering Trout's motion for summary judgment we are required to construe liberally the facts in the record in favor of EMSI and Van Gelder, to draw all reasonable inferences from the record in their favor, and to resolve all doubts against Trout. *Pearson v. Parsons,* 114 Idaho 334, 757 P.2d 197 (1988). Applying these rules to the record here, we conclude that the proposed action against Trout for which EMSI had incurred attorney fees by November 4, 1984, would have been based only on Trout's failure to clear the tax lien of the State of Idaho from the title to the property, and not on the alleged failure of Trout to inform EMSI of the $31,800 appraisal on the property. Therefore, we conclude that any damage that EMSI and Van Gelder had suffered by November 2, 1984, by having incurred attorney fees, related only to the failure to clear the title and not to the question of the value of the property. Under the rule in *Streib,* the two year statute of limitations of I.C. § 5–219(4) bars the claims of EMSI and Van Gelder with regard to this professional malpractice of Trout.

We must next consider whether the action for malpractice because of Trout's alleged failure to inform EMSI and Van Gelder about the $31,800 appraisal accrued more than two years before the third-party complaint was filed in September of 1987. In order to do so, we must determine when EMSI and Van Gelder first suffered damage because of this alleged failure. EMSI and Van Gelder were served with the complaint of the Griggses on August 5, 1985. In the complaint the Griggses alleged that the property was worth only $31,800 and that EMSI and Van Gelder were negligent in failing to investigate or determine the fair market value of the property before the loan was made to the Nashes. In each of four claims in the complaint the Griggses requested judgment against EMSI and Van Gelder of (1) $75,000, plus additional sums to be proved at trial, less any sums received from the sale of the property, (2) punitive damages in the amount of $100,-000, (3) interest on the entire amount of the judgment, and (4) reasonable attorney fees in the amount of $10,000, if the matter was not contested, plus additional attorney fees in the event of contest, trial or appeal.

While the record does not indicate exactly when EMSI and Van Gelder commenced their defense to the action, on September 9, 1985, the trial court sent to the attorneys who now represent EMSI and Van Gelder a copy of an order reassigning the case to a different district judge. This makes it clear that at least by that date EMSI and Van Gelder were represented by counsel and were defending the action. Further evidence of the defense of the action is contained in the transcript of the deposition of Van Gelder taken on November 26, 1985. The transcript indicates that prior to the deposition an amended notice of taking the deposition had been issued. On November 11, 1985, the Griggses had requested production of documents from Van Gelder. The exhibits to the deposition were from the documents produced pursuant to this request. From these facts we conclude that EMSI and Van Gelder suffered damage, as that concept was used in *Streib*, by no later than September 9, 1985, when they were being represented by counsel in de-fending against the complaint. Therefore, we conclude that the action of EMSI and Van Gelder against Trout for malpractice accrued by at least September 9, 1985. To avoid being barred by I.C. § 5–219(4), an action by EMSI and Van Gelder for professional malpractice based on Trout's alleged failure to inform them of the value of the property must have been commenced by September 9, 1987.

On January 29, 1987, EMSI and Van Gelder filed a motion pursuant to I.R.C.P. 14(a) for leave to file a third-party complaint against Trout. A copy of the third-party complaint was attached to the motion. On September 8, 1987, the trial court signed an order granting EMSI and Van Gelder leave to file their third-party complaint. The order was filed on September 10, 1987. The third-party complaint was filed on September 23, 1987. Pursuant to I.R.C.P. 3(a), an action is commenced by the filing of a complaint. Therefore, the action contained in the third-party complaint was not commenced until September 23, 1987. This was at least 14 days after the two-year statute of limitations had run. Therefore, we affirm the trial court's ruling that the third-party complaint was barred by I.C. § 5–219(4).

## IV.

## TROUT WAS ENTITLED TO ATTORNEY FEES PURSUANT TO I.C. § 12–120(3).

EMSI and Van Gelder assert that the trial court should not have awarded Trout attorney fees pursuant to I.C. § 12–120(3). The portion of this statute under which the trial court made its award became effective on July 1, 1986. It provided that "[i]n any civil action to recover ... in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court." "Commercial transaction" was defined to mean "all transactions except transactions for personal or household purposes." 1986 Idaho Sess. Laws, ch. 205, pp. 511–12. EMSI and Van Gelder contend that this statute

should not have been applied in this case, because its application was retroactive. We disagree.

I.C. § 73–101 provides that no part of our statutes "is retroactive, unless expressly so declared." In *Myers v. Vermaas*, 114 Idaho 85, 753 P.2d 296 (1988), our Court of Appeals held that the 1986 amendment that is at issue here should not be given retroactive effect:

> The automatic nature of an award under I.C. § 12–120 makes it, in effect, an adjunct to the underlying commercial agreement between the parties. It establishes an entitlement. In this respect, an award under the statute is closely akin to other "contractual or vested" rights contained in the agreement itself. Although the award right is "remedial" in the semantic sense that it relates to a remedy, the same could be said of contract provisions relating to damages or other relief in the event of default.
>
> Accordingly, we think that the 1986 amendment to I.C. § 12–120, which enlarged the scope of entitlement to mandatory attorney fee awards, is more accurately classified as substantive than as merely remedial or procedural. Consequently, the 1986 amendment should not be given retroactive effect. Accord, *In re Comstock*, 16 B.R. 206 (Bkrtcy.D.Idaho 1981) (interpreting former I.C. § 12–120(2) as providing a substantive remedy).

114 Idaho at 87, 753 P.2d at 298.

In *Myers*, the Court of Appeals refused to allow the 1986 amendment to be applied to an action that was filed in 1985. In doing so, the court cited its decision in *DeWils Interiors, Inc. v. Dines*, 106 Idaho 288, 678 P.2d 80, *rev. den.* (1984). There, the Court of Appeals indicated that it was fair to apply prior amendments to I.C. § 12–120 to cases that were filed after the amendment took effect. The court said:

> The parties are abjured by the statute to evaluate carefully the merits of their claims or defenses in the commercial dispute. When deciding whether to litigate, each party must weigh the potential benefits of prevailing against the potential

costs of losing. There is a direct relationship between a party's decision to litigate a commercial dispute and the benefits or costs which flow from that decision.

106 Idaho at 293, 678 P.2d at 85.

Based on *Myers* and *DeWils*, the trial court awarded attorney fees to Trout because I.C. § 12–120(3) was in effect when EMSI and Van Gelder moved for leave to file their third-party complaint in 1987. In resolving this issue, we agree with the analysis of the Court of Appeals in those cases and differ only slightly from the trial court's reasoning.

In *Jensen v. Shank*, 99 Idaho 565, 585 P.2d 1276 (1978), this Court held that the award of attorney fees pursuant to I.C. § 12–121 for a claim that arose prior to the enactment of that section was not an improper retroactive application. In doing so, the Court characterized the statute as "remedial and procedural and not as affecting the substantive claim for relief." 99 Idaho at 566–67, 585 P.2d at 1277–78. We believe that the Court of Appeals in *Myers* correctly distinguished *Jensen* in reaching its conclusion when it pointed out that "I.C. § 12–120 provides for a *mandatory*, not discretionary, award of attorney fees to the prevailing party in commercial litigation," while an award pursuant to I.C. § 12–121 is discretionary. (Emphasis in original.) 114 Idaho at 87, 753 P.2d at 298.

We hold that I.C. § 12–120(3) was correctly applied by the trial court to the claims contained in the third-party complaint. The action by EMSI and Van Gelder was commenced in September 1987, not in January 1987, as is the trial court held. It was not a retroactive application for the trial court to award attorney fees to Trout pursuant to a statute that became effective in 1986.

Since Trout was entitled to attorney fees at the trial court level, he is also entitled to attorney fees here pursuant to I.C. § 12–120(3). *Robinson v. Joint School District No. 331*, 105 Idaho 487, 670 P.2d 894 (1983). *Cf. Dewils*, 106 Idaho at 292–93, 678 P.2d at 84–85.

**236**

## V.

### CONCLUSION.

We affirm the summary judgment and the award of attorney fees by the trial court.

Costs and attorney fees on appeal to respondent.

BAKES, BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.

BAKES, Justice, concurring specially:

To my knowledge, this is the first case in which this Court has had the occasion to define what "damage" is for purposes of determining when the statute of limitations in I.C. § 5-219(4) begins to run. In *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985), this Court held that even though I.C. § 5-219(4) provides that "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom ...," the statute of limitations did not begin to run until some damage occurred, *i.e.*, not until the time of the Internal Revenue Service's assessment of penalties and interest. *See also Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984); *Stephens v. Stearns*, 106 Idaho 249, 678 P.2d 41 (1984). The date of damage now being the rule for the commencement of the running of the statute of limitations in Idaho, this is the first occasion we have had to determine what constitutes "damage" for purposes of commencing the running of the statute of limitations under *Streib v. Veigel*. I concur in the majority opinion's conclusion that the incurring of $1,500 of attorney fees expense was "damage" in order to commence the running of the statute of limitations in I.C. § 5-219(4), as interpreted in the foregoing cases.

The sole grounds for asserting error in the award of attorney fees under 12-120(3) in this case was the claim that the application of that section to the facts of this case constitutes a retroactive application of the 1986 amendment to I.C. § 12-120. I concur in the majority opinion that the application of the 1986 amendment in this case is not a retroactive application of the statute in violation of I.C. § 73-101.