918 P.2d 592

**Edward G. ELLIOTT and Mary L. Elliott, husband and wife, Plaintiffs–Appellants,**

v.

**William A. PARSONS and Parsons, Smith, Stone & Fletcher, Attorneys At Law, an Idaho general partnership, Defendants–Respondents.**

No. 21825.

Supreme Court of Idaho, Boise, April 1996 Term.

June 17, 1996.

**724**

Charles J. Nicholas, Boise, for appellants.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondents. Richard B. Kading, Jr. argued.

JOHNSON, Justice.

This is a legal malpractice case. The primary issue presented is when the clients sustained "some damage," which commenced the running of the two-year statute of limitations contained in I.C. § 5–219(4) (1990). We conclude that the statute of limitations bars the case because the clients sustained "some damage" seven years before bringing this action when they retained new counsel to resist Internal Revenue Service (I.R.S.) claims stemming from their former lawyer's allegedly negligent structuring and drafting of a transaction for the sale of their business.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

Edward and Mary Elliott owned several business entities, including a wholly-owned corporation which operated a farm equipment dealership. In October 1982, the Elliotts consulted with their attorney, William Parsons, regarding a proposed sale and spin-off of various elements of their corporation and dealership. According to the Elliotts, Parsons was supposed to structure the transactions so the Elliotts would qualify for I.R.C. § 453(h) installment sales treatment, deferring their tax liability on the sales until they actually received the payments on the installment contracts. Parsons drafted the documents, and the transactions were completed.

The Elliotts filed their 1982 federal tax return based on the assumption that the transactions qualified for installment sales treatment. After an audit, I.R.S. concluded that the transactions did not qualify for installment sales treatment and that the tax liability for the sales could not be deferred. Accordingly, I.R.S. issued the Elliotts a "30–day letter" on February 14, 1986, claiming the Elliotts owed an additional $276,805 in taxes and $41,521 in interest for 1982. The Elliotts immediately retained a tax lawyer and pursued the administrative appeal process for tax disputes.

The I.R.S. administrative process did not resolve the matter, and I.R.S. issued a "90–day letter," or notice of deficiency. In response, the Elliotts instituted proceedings in the U.S. Tax Court. On the eve of the tax court trial, the Elliotts reached a settlement with I.R.S. in the summer of 1992. Based on that settlement, on November 2, 1992, I.R.S. issued an assessment against the Elliotts for $127,289 in unpaid taxes and $215,855 in interest.

On March 26, 1993, the Elliotts sued Parsons and his law firm, alleging that Parsons's negligent structuring and drafting of the transactions resulted in the Elliotts' failure to qualify for installment sales treatment. Parsons moved for summary judgment, ask-

ing the trial court to rule that the two-year statute of limitations for professional malpractice contained in I.C. § 5–219(4) barred the Elliotts' claims.

The trial court concluded that the Elliotts suffered "some damage" when they received the 30–day letter from the I.R.S. in February 1986, seven years before they filed their complaint, and dismissed the Elliotts' claims. The Elliotts appealed.

## II.

## THE ELLIOTTS SUFFERED "SOME DAMAGE" WHEN THEY RETAINED NEW TAX COUNSEL TO RESIST THE I.R.S. CLAIMS.

■ The Elliotts assert that they did not sustain any damage until I.R.S. issued its enforceable assessment for unpaid taxes in November 1992. We disagree.

■ The two-year statute of limitations for professional malpractice in I.C. § 5–219(4) does not begin running until the party claiming malpractice suffers "some damage" as a consequence of the alleged malpractice. *See, e.g., Chicoine v. Bignall,* 122 Idaho 482, 835 P.2d 1293 (1992); *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991). In accordance with the legislature's rejection of a discovery rule, the statute begins to run when there is "some damage," not when the party claiming malpractice discovers the damage. *See Bonner v. Roman Catholic Diocese of Boise,* 96.4 ISCR 128 (1996).

This Court first applied the "some damage" principle in a professional malpractice case in *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985). In *Streib,* which involved an accountant charged with malpractice in preparing a tax return, the Court concluded that "the Internal Revenue Service's *assessment* of penalties and interest" was the point at which some damage was sustained. *Id.* at 178, 706 P.2d at 67 (emphasis added). Although the facts of *Streib* did not require the Court to elaborate on what it meant by "assessment" because the accountant conceded that the action was timely if judged from that date, it is clear that it meant the point at which I.R.S. assesses an enforceable and collectible tax liability against the taxpayer, not the mere initiation of the I.R.S. challenge as evidenced by the 30–day and 90–day letters. The issuance of an assessment under I.R.C. § 6203 may come soon after I.R.S. challenges a tax return as in *Streib,* or it may come at the conclusion of a lengthy administrative and legal process as in the present case. Until there has been an assessment of unpaid taxes against the taxpayer, I.R.S. has not inflicted "some damage" against the taxpayer—at least not as the term was used by this Court in *Streib.*

*Streib* does not resolve the present case, however, because the Elliotts suffered "some damage" before the issuance of the I.R.S. assessment when they retained new tax counsel to resolve their disputes with I.R.S. in February 1986. In *Griggs v. Nash,* 116 Idaho 228, 234, 775 P.2d 120, 126 (1989), the Court applied the "some damage" rule in holding that the expenditure of legal fees to defend against an action filed because of an attorney's alleged malpractice constituted "some damage." In their complaint the Elliotts sought to recover from Parsons the $50,000 in legal fees they incurred pursuing their appeals and negotiations with I.R.S. The Elliotts concede that they incurred several thousand dollars in professional fees in 1986 and in each year thereafter through 1992 as their attorneys and accountants pursued their I.R.S. appeal.

Like the parties claiming malpractice in *Griggs,* the Elliotts sustained "some damage" in the form of attorney fees—a monetary loss they would not have suffered but for Parsons's alleged malpractice—when they hired new tax lawyers in 1986 after receiving the 30–day letter from I.R.S. Therefore, we uphold the trial court's summary judgment in favor of Parsons, although based on a different rationale of when the Elliotts sustained "some damage" to commence the running of the two-year statute of limitations contained in I.C. § 5–219(4).

## III.

## CONCLUSION

We affirm the trial court's summary judgment in favor of Parsons.

We award Parsons costs on appeal. Parsons did not request attorney fees.

McDEVITT, C.J., TROUT and SCHROEDER, JJ., and WOODLAND, J. Pro Tem., concur.