87 P.3d 286

Gordon ANDERSON and Thomas Anderson, individually, as Trustees of the Anderson Family Trust, and as Personal Representatives of the Estate of Ora Anderson, Gordon Anderson, Duly Designated Trustee of the Gordon Anderson Family Trust; Thomas Anderson, Duly Designated Trustee of the Thomas Anderson Family Trust; Rodney B. Curtis, Duly Designated Trustee of the Anderson Irrevocable Trust; and Ronald Blackwood, Duly Designated Trustee of the Colleen Adams Family Trust, Plaintiffs–Appellants,

v.

James D. GLENN, Jr., Lloyd Webb, Riley Burton and Kenneth Pedersen, Defendants–Respondents.

No. 29300.

Supreme Court of Idaho, Boise, May 2003 Term.

Nov. 3, 2003.

Rehearing Denied March 19, 2004.

Ellis, Brown & Sheils, Chtd., Boise, for appellants. Allen B. Ellis argued.

Holland & Hart, Boise, for respondents. Steven B. Anderson argued.

SCHROEDER, Justice.

James D. Glenn, Jr., Lloyd Webb, Riley Burton and Kenneth Pedersen are lawyers whose firm did work in setting up a trust for Albert and Ora Anderson. James D. Glenn, Jr. was the attorney who handled the matter for the Andersons. Gordon Anderson and Thomas Anderson are trustees of the trust and personal representatives of the estate of Albert and Ora Anderson and brought this action, claiming malpractice in the establishment of the trust. The district court dismissed the suit on the grounds that the statute of limitations had run. The trust was set up in 1978; property was transferred to the trust in 1980; the statute of limitations is two years; this action was brought in 1999. The issue on appeal is what event triggers commencement of the statute of limitations. Gordon and Thomas Anderson contend the time began to run when the first legal costs were incurred with respect to the incident of malpractice. The district court ruled that the statute of limitations began to run in 1980 when the grantors to the trust lost control of the property they put in trust.

I.

BACKGROUND AND PRIOR PROCEEDINGS

Albert and Ora Anderson hired Glenn in 1978 to prepare an estate plan to remove portions of their assets from their estate to minimize estate taxes. The estate plan

Glenn developed called for the creation of the Anderson Family Trust into which Albert and Ora would transfer cash, several shares of stock and their home. This transfer into the irrevocable trust was made in April of 1980. However, the language of the trust instrument reserved to Albert and Ora Anderson annual trust income and the power of appointment over some of the assets. As a consequence, their estate would be responsible for estate taxes on the trust assets. Albert Anderson died in 1983. Ora Anderson died in 2000, and substantial estate taxes were levied against the trust assets, diminishing their value and preventing distribution of the assets in accordance with the expectations of the trust.

Gordon and Thomas Anderson first learned of the defects in the trust on August 27, 1997, when another attorney warned them of the defects in the estate plan. They filed this action on August 26, 1999.

■ Glenn moved for summary judgment on the grounds that the action was time barred under I.C. § 5–219, which states in relevant part:

§ 5–219. Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.

Within two (2) years:

. . .

4. An action to recover damages for professional malpractice . . . [T]he cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer.

The district court applied the "some damage" rule as it was set down in *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985). Under this rule, the two (2) year statute of limitation begins to run when the party first incurs "some damage" resulting from the alleged malpractice. This Court "extended the date for the accrual of actions for professional malpractice where the negligence is continu-

ing, until the date that damage occurred." *Griggs v. Nash*, 116 Idaho 228, 232, 775 P.2d 120, 124 (1989). The district court made the following ruling:

In 1980 the Plaintiffs transferred their cash, home and stock into the trust, and by so doing effectively lost control of their ability to use those assets as they desired. Plaintiffs lost the ability to receive interest on the cash, sell their property or receive the dividends paid on the H.J. Heinz stock they placed into the fund. This loss of control and right to receive income constituted a monetary loss. As the case law shows, a loss of money due to the actions of the alleged negligent party constitutes "some damage", and therefore the two year statute of limitations begins to run. Hence, the statute of limitations would have expired in 1982 and Plaintiff's cause of action against the Defendant expired at that time as well.

The appeal was initially assigned to the Court of Appeals which rendered a decision. This Court granted review.

## II.

### UNDER THE "SOME DAMAGE" RULE, THE STATUTE OF LIMITATIONS FOR MALPRACTICE UNDER I.C. 5–219(4) BEGAN TO RUN IN 1980 WHEN THE ANDERSONS TRANSFERRED PROPERTY TO THE TRUST

#### A. Standard of Review

In *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991), this Court reviewed a grant of summary judgment in which the statute of limitations for a cause of action for malpractice had run under the "some damage" rule. As to the standard of review in that case, this Court stated:

A motion for summary judgment shall be rendered forthwith if the pleading, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56; *Rawson v. United Steelworkers of Am.*, 111 Idaho 630, 726 P.2d 742 (1986);

*Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973). Standards applicable to summary judgment require the district court and Supreme Court upon review, to liberally construe facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Tusch Enters. v. Coffin,* 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Palmer v. Idaho Bank & Trust of Kooskia,* 100 Idaho 642, 603 P.2d 597 (1979). "[M]otions for summary judgment should be granted with caution." *Bailey v. Ness,* 109 Idaho 495, 497, 708 P.2d 900, 902 (1985); *Steele v. Nagel,* 89 Idaho 522, 528, 406 P.2d 805, 808 (1965). If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Farmers Ins. Co. of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); *Stewart v. Hood Corp.,* 95 Idaho 198, 506 P.2d 95 (1973).

119 Idaho at 541, 808 P.2d at 878.

### B. Application Of The "Some Damage" Rule

The Court outlined the law applicable to limitations on the commencement of a professional malpractice action in *Lapham v. Stewart,* 137 Idaho 582, 585–86, 51 P.3d 396, 399–400 (2002): "An action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued. Idaho Code § § 5–201 & 5–219 (1998)."

 "The determination of what constitutes 'damage' for purposes of accrual of an action must be decided on the circumstances presented in each individual case." *Bonz v. Sudweeks,* 119 Idaho 539, 543, 808 P.2d 876, 880 (1991). The issue in this case is whether the transfer of property into the flawed trust with the accompanying loss of control over portions of that property constituted "some damage."

In *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985), accountants prepared flawed tax returns for the years of 1976 through 1980. The errors were discovered in 1982 when new accountants were hired and the Internal Revenue Service (I.R.S.) began levying sanctions. Suit was filed in 1983. 109 Idaho at 174, 706 P.2d at 63. The Court analogized the situation to:

> the sale of a tainted but frozen piece of meat which is then stored by the purchaser for more than two years before it is prepared and eaten with resultant injuries; or a vintner's sale of a case of wine containing one poisoned bottle, which the customer more than two years later decants and consumes, sustaining tragic injuries as a consequence.

*Id.* at 175, 706 P.2d at 64. The Court held that "the preparation and submission of income tax returns contemplate a review by the Internal Revenue Service, with damages resulting at that time if the returns have been erroneously prepared." *Id.* at 179, 706 P.2d at 68. The negligence occurred when the accountant prepared the statement, but that act did not harm the taxpayer until the I.R.S. processed the return and made an assessment. There was no surrender of control of property as in this case, hence no damage at the time the returns were erroneously prepared.

In *Elliott v. Parsons,* 128 Idaho 723, 918 P.2d 592 (1996), an attorney negligently structured and drafted a transaction for the sale of the Elliott's business which resulted in the failure of the transaction to qualify for installment sales treatment which in turn resulted in increased liability and interest payment to the I.R.S. The Court distinguished Elliott's case from *Streib,* holding that some damage occurred when the Elliotts hired new tax lawyers in 1986 after receiving a 30 day letter from the I.R.S. This accelerated the running of the statute of limitations.

In *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991), the defendant attorneys failed to properly record the plaintiffs' land in 1986. This gave rise to a cloud on the title that was discovered by a potential investor and prevented him from following through on a deal with the plaintiff to develop the land,

causing the plaintiff to fail to meet other financial obligations in 1988. 119 Idaho at 539–40, 808 P.2d at 876–77. The Court made the following analysis:

> Our review of the record clearly demonstrates that the damage to the plaintiffs did not occur when the release of lis pendens was mistakenly recorded in Lincoln County. Rather, the damage occurred in March, 1987, when the investor learned of the cloud on the Jerome County property and thereafter refused to participate in a venture to develop the property. It was at the time the investor refused to participate financially in the property development that plaintiffs were damaged, rather than at the time the release was inadvertently filed in the wrong county.

*Id.* at 543, 808 P.2d at 879. Although the plaintiff conceivably suffered damage because their land had less value once it was improperly recorded, the incident of malpractice did not affect the plaintiff until it interfered with the deal with a third party.

In *Fairway Dev. Co. v. Petersen, Moss, Olsen, Meacham & Carr,* 124 Idaho 866, 865 P.2d 957 (1993), the plaintiff hired legal counsel to challenge local tax assessments in the district court, but the attorney failed to exhaust the administrative remedies available before proceeding in the district court. The case was subsequently dismissed in 1988, and the action was barred because the time had run to file an administrative complaint. · This Court upheld the dismissal in 1990. 124 Idaho at 867–68, 865 P.2d at 958–59. The plaintiff filed suit in 1991 for malpractice, claiming the 1990 decision of this Court as the point of some damage. This Court held that the 1988 dismissal was the point of some damage because:

> The loss of the right to pursue post-confirmation interest was "some damage" and the creditor's malpractice claim against its attorney for failing to request post-confirmation interest was deemed accrued as of the date of confirmation.

*Id.* at 869, 865 P.2d at 960 (citations omitted).

The most recent decision of this Court that is relevant is *Lapham v. Stewart,* 137 Idaho 582, 51 P.3d 396 (2002), which involved a claim of legal malpractice when an attorney's secretary erroneously disbursed the entirety of loan proceeds from the attorney's trust account. The funds were to be disbursed incrementally. The Court found that the client suffered damage when the unauthorized disbursement occurred, which began the running of the statute of limitations. The client argued that damage did not occur until the unpaid balance of the loan became due. The consequence of the Court's decision was that the claim for legal malpractice was time barred.

■ The cases that are closest to the situation presented in this case are *Elliott v. Parsons,* and *Lapham v. Stewart.* In *Elliott,* the Court determined that damage did not occur at the time the installment sales transaction was improperly structured which ultimately resulted in the imposition of an earlier and greater tax liability than was intended. The Elliotts could not have avoided the sale based upon the erroneous structuring, because the contract was with a third party. *Elliott* is similar to this case in that the trust was improperly structured, resulting in tax liability to the estate and defeating the purpose of the trust to avoid that tax liability. However, this case is also similar to *Lapham* in which money was improperly disbursed, constituting damage at that time since an action could have been brought to obtain the amount improperly disbursed. In this case, the Andersons disbursed property to a trust to secure an advantage on future tax liability. They surrendered property to secure a specific goal, giving up substantial rights of control, though not enough to avoid tax liability. That is damage. They could have acted at that time to reform the trust or sought to recover control of the property based upon that error,[1] unlike *Elliott v. Par-*

---

1. Regarding a tax error that is embodied in the substantive provisions of an irrevocable trust, an effort may be made in the state courts to have the instrument rescinded or reformed to cure the tax error on the ground that it was created under a mistake of law. Donald L. Sharpe, *28th Annual N.Y.U. Institute on Federal Taxation,* 28 N.Y.U. Ann. Inst. Tax'n 947 (1970). For example, in a

*sons* where the Elliotts could not void the contract because it involved the rights of a third party. This case is closest to *Lapham v. Stewart* in which money was improperly disbursed and action could have been taken to recover it immediately. Action could have been taken immediately to avoid the effect of the improperly drawn trust. Damage occurred when the trust was created and control of the property surrendered to that trust. The action is barred by the statute of limitations.

## III.

## CONCLUSION

The decision of the district court is affirmed. Glenn is awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS and KIDWELL concur.

Justice EISMANN, Dissenting.

Because I do not agree that Albert and Ora Anderson were damaged when their property was transferred into the trust, I respectfully dissent.

As the majority notes, this case hinges upon when the Andersons suffered some damage. In 1978 the Andersons engaged the services of attorney James D. Glenn, Jr., to create a trust and transfer their assets into that trust in order to minimize their estate taxes. Glenn created the irrevocable trust, and in April 1980 the Andersons transferred assets into that trust. On August 27, 1997, the trustees and personal representatives of the Andersons' estates learned that the trust document was defective and would not minimize the estate taxes as intended because it reserved to the Andersons the annual trust income and the power of appointment over some of the assets. The plaintiffs filed this lawsuit within two years of that date, before

case where an irrevocable trust contained an error through the inadvertence and mistake of the scrivener, the Pennsylvania Supreme Court held that:

[U]nder appropriate circumstances a court in equity may reform a [trust] deed. Whether the omission in the deed was in truth and in fact a

any additional estate taxes were assessed or paid.

The transfer of the assets into the trust did not damage the Andersons because that is precisely what they retained their attorney to accomplish. They wanted those assets out of their ownership. He did not transfer into the trust assets that they wanted to retain, which distinguishes this case from *Lapham v. Stewart*, 137 Idaho 582, 51 P.3d 396 (2002). In *Lapham*, the client claimed that he put monies into the hands of his attorney with instructions not to disburse the money without the client's express authorization, and the attorney disbursed that money without authorization. Here, the Andersons wanted their assets transferred into the trust in order to minimize their estate taxes. The assets were transferred into the trust as they requested, but because the attorney did not draft the trust instrument properly, estate taxes were not minimized. This case is indistinguishable from *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985), in which accountants negligently prepared income tax returns for the years 1976 through 1980, and more than two years later the Internal Revenue Service assessed interest and penalties when it disallowed certain deductions claimed in those returns. In reversing the grant of summary judgment based upon the statute of limitations, this Court held, "In the instant case, no damages accrued to the plaintiffs until the time of the Internal Revenue Service's assessment of penalties and interest." 109 Idaho at 178, 706 P.2d at 67. When addressing *Streib* in *Elliott v. Parsons*, 128 Idaho 723, 918 P.2d 592 (1996), this Court stated:

This Court first applied the "some damage" principle in a professional malpractice case in *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985). In *Streib*, which involved an accountant charged with malpractice in preparing a tax return, the Court concluded that "the Internal Revenue Service's *assessment* of penalties and interest" was

mistake or inadvertence depends upon the findings of fact of a chancellor who sees and hears the witness, and which, if approved by the court in banc, would warrant a decree of reformation.

*Irish v. Irish*, 361 Pa. 410, 412–13, 65 A.2d 345.

the point at which some damage was sustained. *Id.* at 178, 706 P.2d at 67 (emphasis added). Although the facts of *Streib* did not require the Court to elaborate on what it meant by "assessment" because the accountant conceded that the action was timely if judged from that date, it is clear that it meant the point at which I.R.S. assesses an enforceable and collectible tax liability against the taxpayer, not the mere initiation of the I.R.S. challenge as evidenced by the 30–day and 90–day letters. The issuance of an assessment under I.R.C. § 6203 may come soon after I.R.S. challenges a tax return as in *Streib,* or it may come at the conclusion of a lengthy administrative and legal process as in the present case. **Until there has been an assessment of unpaid taxes against the taxpayer, I.R.S. has not inflicted "some damage" against the taxpayer—at least not as the term was used by this Court in** *Streib.*

128 Idaho at 725, 918 P.2d at 594 (emphasis added). I would therefore reverse the grant of summary judgment.