720 P.2d 191

**MACK FINANCIAL CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**Roland J. SMITH, Darius T. Bailey, collectively doing business as Smith Bailey & Company, Defendants-Respondents.**

**No. 15764.**

Supreme Court of Idaho.

May 29, 1986.

Gary D. Babbitt, Karen L. Lansing (argued), and Cumer L. Green, Boise, and Laurence H. LeVine, Chicago, Ill., for plaintiff-appellant.

Brian K. Julian, Marc A. Lyons, and Bruce R. McAllister, Boise (argued), for defendants-respondents.

THE PREVIOUS 1986 OPINION NO. 42, DATED MARCH 6, 1986, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

BISTLINE, Justice.

## HISTORY

Mack Financial, the plaintiff in this case, is a subsidiary of Mack Trucks, Inc. Mack Financial's primary function is to finance the sale of trucks manufactured by Mack Trucks, Inc.

During 1978, Shoemaker Trucking Co. became interested in purchasing a large number of Mack Trucks from Interstate Mack, Inc., an Idaho distributor for Mack Trucks, Inc. Mack Financial was asked to finance the sale of trucks. Mack Financial agreed to extend $5 million of credit to Shoemaker to finance the truck purchases on the express condition that Shoemaker provide year-end financial statements audited by a certified public accountant. This requirement was incorporated into a Master Loan Agreement between Shoemaker and Interstate Mack, Inc. Shoemaker contracted with defendants Smith and Bailey to perform the audits required by Mack Financial under the terms and conditions of the Master Loan Agreement.

Smith and Bailey performed audits for the years 1978, 1979 and 1980. The results of the audits were forwarded to Mack Financial. The audits did not disclose any problems with Shoemaker's financial condition.

Smith and Bailey submitted two audit reports for fiscal year 1980, the second one being delivered on April 14, 1981. On April 17, 1981, Shoemaker declared bankruptcy.

Because of the filing of Shoemaker's bankruptcy petition, Mack Financial contracted with Arthur Andersen & Co., a firm of certified public accountants, to furnish an independent report regarding Shoemaker's present financial condition. In June of 1981, Mack Financial received the report, which identified errors in the earlier auditing of Shoemaker's financial statements.

Mack Financial's extension of credit to Shoemaker was secured, and payment of that debt was guaranteed by Interstate Mack. Therefore, Mack Financial claims that it thought it could recover the full amount owed to it by Shoemaker, notwithstanding the bankruptcy filing. In the spring of 1983, the United States Bankruptcy Court for the District of Idaho determined Mack Financial's claims. At that time, Mack Financial asserts that it became aware that it would be unable to recover the full amount of Shoemaker's indebtedness to it from the bankruptcy trustee. In September of 1983 Interstate Mack also declared bankruptcy. Mack Financial commenced this action against defendants Smith and Bailey on April 23, 1984.

Mack Financial's complaint alleges three causes of action: fraud, negligent misrepresentation, and breach of a third-party beneficiary contract. The district court, on a grant of summary judgment, ruled out the latter two causes of action as being time-barred by Idaho's statute of limitations governing professional malpractice suits. Mack Financial appeals to this Court. We reverse and remand.

## I. THE ISSUES PRESENTED IN THIS CASE

Smith and Bailey argue that Idaho's two-year statute of limitations applicable to professional malpractice claims—I.C. § 5–219(4)—bars Mack Financial's action. That statute reads, in pertinent part, as follows:

5–219. **Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.**—Within two (2) years:

....

4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; ... *the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer,* and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. (Emphasis added.)

Mack Financial argues that its claims of negligent misrepresentation and breach of a third-party beneficiary contract are governed, respectively, by longer statutes of limitations governing fraud, I.C. § 5–218, breach of a written contract, I.C. § 5–216, or breach of an oral contract, I.C. § 5–217. Construing the facts most favorably to Mack Financial, the nonmoving party, as we must on this appeal, *Bailey v. Ness,* 109 Idaho 495, 708 P.2d 900, 902 (1985), we hold that Mack Financial's cause of action did not accrue until within *two* years of the filing of this suit. Thus, it is unnecessary for us to decide which statute of limitations applies to this case.

## II. STREIB v. VEIGEL

Our conclusion is based upon our recent decision in *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985), which the district judge did not have the benefit of when it decided this case below. There it was held that an action for professional accounting malpractice, which in *Streib* consisted of the negligent preparation of income tax returns, did not accrue until the Internal Revenue Service assessed penalties and interest against the taxpayers. Hence, because the taxpayers-plaintiffs filed their suit within two years of the time of the assessment, we held that their claim was timely filed. *Id.* at 178, 706 P.2d at 67.

In *Streib,* we disagreed with the defendants argument that the plaintiffs' suit was barred because the conduct causing the alleged malpractice occurred more than two years prior to the date the Internal Revenue Service assessed the penalties against the plaintiffs, and relied on the general rule that " 'statutes of limitations do not begin to run against negligence causes of action until some *damage* has occurred.' " *Id., quoting Blake v. Cruz,* 108 Idaho 253, 260, 698 P.2d 315, 322 (1984). In many instances, as noted in *Streib,* the defendant's tortious act may be committed far in advance of the date in which any damages have occurred. *Streib, supra,* 109 Idaho at 175, 706 P.2d at 64. Two of many possible examples were suggested where such might occur: "the sale of a tainted but frozen piece of meat which is then stored by the purchaser for more than two years before it is prepared and eaten with resultant injuries; or a vintner's sale of a case of wine containing one poisoned bottle, which the customer more than two years later decants and consumes, sustaining tragic injuries as a consequence." *Id.*

In *Streib,* we held that plaintiffs were not *damaged* until their tax return was challenged and penalties assessed by the

Internal Revenue Service, reasoning that "had the tax returns never been audited, no loss would have been suffered and plaintiffs-appellants would have had nothing to gain from filing suit." *Id.* at 178, 706 P.2d at 67. *Accord, Blake, supra,* 108 Idaho at 260, 698 P.2d at 322.

We perceived that torts such as the suggested examples and Streib's cause of action were "continuing in nature" until damages resulting from the tortious conduct occurred. *Streib, supra,* 109 Idaho at 179, 706 P.2d at 68. In considering such a tortious activity, we mentioned another example to demonstrate the Court's rationale:

> If A sets a spring gun and two years elapse before B, a police officer, opens the door, has B's cause of action been barred by the statute of limitations? Or is the tort continuing in nature until B is damaged? Clearly the latter result should obtain. *Id.*

Our analysis in *Streib* concluded with the statement that our holding was consistent with the policy reasons behind statutes of limitations:

> The policy behind the imposition of statutory time limits for the filing of legal claims was stated in *Renner v. Edwards,* 93 Idaho 836, 838, 475 P.2d 530, 532 (1970):
>
> > "It is eminently clear that statutes of limitation were intended to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of reasonable prosecution. They are, to be sure, a bane to those who are neglectful or dilatory in the prosecution of their legal rights. 1 Wood, Limitation of Actions, § 4, p. 8. As a statute of repose, they afford parties needed protection against the necessity of defending claims which,

because of their antiquity, would place the defendant at a grave disadvantage. In such cases how resolutely unfair it would be to award one who has wilfully or carelessly slept on his legal rights an opportunity to enforce an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses."

Here, plaintiffs cannot in any way be deemed to have slept on their rights and the policy justifications for disallowing stale claims simply do not exist. *Id.*

## III. *STREIB v. VEIGEL* APPLIED

According to *Streib,* then, the validity of Mack Financial's suit depends upon the date when Mack Financial suffered "some damage." *Stephens v. Stearns,* 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). Viewing the facts most favorably to Mack Financial, we hold that that date was the "spring of 1983" when the United States Bankruptcy Court in Idaho resolved Mack Financial's claim against the bankruptcy trustees of Shoemaker;[1] it was not until then that it then became apparent that Mack Financial would not be able to fully recompense from the bankruptcy estate the amount which it had loaned Shoemaker.

Up until that time, Mack Financial had no chargeable knowledge that it would be unable to recover. If the law were such that Mack Financial was required to initiate court action without knowing that it had been damaged, then it would have done so only to later ascertain that a full recovery was obtained in the two bankrupt estates. Thus, the potential for "nothing to gain from filing suit," *Streib, supra,* 109 Idaho at 178, 706 P.2d at 67, existed up to the time when Mack Financial's claims were

---

1. Our statement that Mack Financial's claim against Shoemaker's bankruptcy trustee was not resolved until the "spring of 1983" is based upon the uncontradicted affidavit of Robert T. Desch, Executive Vice-President of Mack Financial. Because we are reviewing on appeal the district court's granting of *defendants'* motion for summary judgment, we are obligated to accept Mr. Desch's statement for purposes of this appeal as being true.

finally resolved against it in the bankruptcy petition.

Nor do we see that Mack Financial can be said to have "slept on [its] rights," *id.* at 179, 706 P.2d at 67, by waiting for resolution of the bankruptcy petition before deciding whether to file suit against the defendants. Nothing suggests that allowing Mack Financial's suit to continue would "place the [defendants] at a grave disadvantage ..." because of the "antiquity" of the claim against them. *Id.* In short, here, "the policy justifications for disallowing stale claims simply do not exist." *Id.*

Were we to hold otherwise today, such would foment future litigation initiated on sheer surmise of potential damages in order to avoid the likely consequence of seeing actions barred by limitations. Such a holding would require potential plaintiffs to sue various categories of professional persons who fall within the ambit of I.C. § 5–219(4), even though those plaintiffs were unaware that they had been damaged. This would result in expensive and time-consuming litigation which could glut the judicial system and at the same time serve no purpose whatever. *Compare, Love v. Board of County Commissioners of Bingham County,* 108 Idaho 728, 731, 701 P.2d 1293, 1296 (1985) (judicial economy mandated a review of the record rather than remanding for further proceedings).

For the foregoing reasons, we reverse the district court and remand this case to it for further proceedings not inconsistent with this opinion. Costs on appeal to appellant; no attorney's fees awarded.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, J., dissents for the reasons set out in his dissenting opinion in *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985).

SHEPARD, Justice, dissenting.

In the words of the well-reasoned opinion of the trial court, "In 1978, Shoemaker and Interstate Mack entered into an agreement for the purchase, by Shoemaker of five million dollars ($5,000,000.00) worth of new and used trucks and trailers. The truck dealer, Interstate Mack, requested that MFC finance Shoemaker's purchases and, agreed to stand behind Shoemaker's obligations as guarantor." Shoemaker agreed to submit audited financial statements and hired Smith Bailey & Company to perform audits for the years 1978, 1979 and 1980. The financial statements for the year 1980 were submitted by Smith Bailey & Company on March 17, 1981, and April 14, 1981.

Shoemaker purchased from Interstate Mack certain vehicles beginning in November 1978 and continuing to and including July 1980. Each vehicle was sold on individual installment sales contracts, each of which contracts were sold by Interstate Mack to MFC.

Shoemaker filed a bankruptcy petition on April 17, 1981, and MFC upon notice thereof engaged the service of Arthur Anderson & Company to furnish an independent report of Shoemaker's financial condition. The Anderson report was received by MFC in June of 1981 and MFC has alleged that the Anderson report identified errors in the auditing of Shoemaker's financial statements made by Smith Bailey & Company. MFC has alleged that the Shoemaker bankruptcy caused damage to MFC because it placed Interstate Mack in a position of financial distress.

On March 10, 1982, Interstate Mack filed an action against Smith Bailey & Company for negligent accounting services rendered in its auditing and statements in relation to Shoemaker's financial condition. MFC's instant lawsuit against Smith Bailey & Company was not filed until April 23, 1984.

MFC asserted its claims based on a number of theories including negligent misrepresentation, fraud, and breach of a contract of which MFC was a third party beneficiary. In my view the trial court correctly rejected MFC's theories excepting that of negligent professional malpractice. There-

after MFC argued that the cause of action against Smith Bailey & Company did not arise until the filing of bankruptcy by Interstate Mack on September 9, 1983. Clearly all of the above events, with the exception of the bankruptcy of Interstate Mack, took place more than two years prior to the filing of the instant claim by MFC against Smith Bailey & Company.

The trial court held that MFC's cause of action, if any, occurred upon the filing of the Shoemaker bankruptcy on April 17, 1981. The trial court relied upon *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977), that the critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the full extent of that injury.

If as MFC alleges that it would not have purchased the contracts from Interstate Mack if it had known the true financial condition of Shoemaker, and hence was damaged by Smith Bailey & Company's negligently prepared financial reports, it cannot be legitimately argued that after Shoemaker's bankruptcy MFC still believed Shoemaker was in a sound financial condition, nor can it be legitimately argued that after the receipt of the Arthur Anderson audit that MFC still believed and relied upon the legitimacy of the Smith Bailey & Company reports.

As was well pointed out in the trial court's decision, at the time of the Shoemaker bankruptcy, MFC immediately sustained damage in that it could not collect interest, attorney fees, or collection costs under the installment sales contracts it had purchased from Interstate Mack. I.C. § 5–219 in pertinent part provides:

"Within two (2) years:

. . . . .

"4. An action to recover damages for professional malpractice ... but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, *and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom....*" (Emphasis added.)

MFC complains of Smith Bailey's financial reports as they relate to the financial condition of Shoemaker. It is simply inconceivable to me that when Shoemaker filed bankruptcy and Arthur Anderson allegedly pointed out errors in the Smith Bailey financial statements, that MFC was not on notice of the existence of a cause of action against Smith Bailey.

The majority bases its conclusion on *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985). In my view, *Streib* is clearly distinguishable from the instant case. There, plaintiff had no knowledge of the malpractice until the IRS assessment notice. Here, plaintiff, by its own statements and pleadings, was aware of the alleged malpractice no later than the receipt of the Arthur Anderson audit.

Also, I view MFC's assertions that it was not damaged by Shoemaker's bankruptcy to be spurious and a red herring. If MFC's assertion is taken literally and at face value, then the negligence of Smith Bailey was not a causative factor in the damages MFC sustained from Interstate Mack's bankruptcy.

I would affirm the decision of the trial court.