732 P.2d 326

**TREASURE VALLEY BANK, a state chartered banking institution, Plaintiff-Appellant,**

v.

**KILLEN & PITTENGER, P.A.; William M. Killen and Kathy Killen, husband and wife; and Gregory C. Pittenger and Linda Pittenger, husband and wife, Defendants-Respondents.**

No. 16186.

Supreme Court of Idaho.

Feb. 5, 1987.

Rolf M. Kehne, Boise, for plaintiff-appellant.

W. Scott Wigle of Quane, Smith, Howard & Hull, Boise, for defendants-respondents.

BAKES, Justice.

The appellant, Treasure Valley Bank (TVB), brought a legal malpractice action against the law firm of Killen & Pittenger, P.A. (Killen), alleging negligent representation in a bankruptcy proceeding. Killen moved for summary judgment alleging that the appropriate statute of limitations set forth in I.C. § 5–219(4)[1] had run. The

1. "5–219. Actions against officers, for penal-

ties, on bonds, and for professional malprac-

district court granted the motion, and TVB then brought this appeal.

In a summary judgment proceeding, "[t]he facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence." *Huyck v. Hecla Mining Co.*, 101 Idaho 299, 300, 612 P.2d 142, 143 (1980); *Farmers Ins. Co. v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976); *Salmon River Sportsmen Camps, Inc. v. Cessna Air Co.*, 97 Idaho 348, 544 P.2d 306 (1975); *Smith v. Idaho State University Federal Credit Union*, 103 Idaho 245, 247, 646 P.2d 1016, 1018 (Ct.App.1982); I.R.C.P. 56(c). On appeal, this Court applies the same standard of review as a district court in evaluating a summary judgment. *Mitchell v. Siqueiros*, 99 Idaho 396, 398, 582 P.2d 1074 (1978).

The facts in this case were stipulated by the parties for the purpose of the summary judgment motion. William Killen represented TVB in a Chapter 13 bankruptcy proceeding initiated by one of TVB's debtors. Killen's duties required him to file TVB's claims with the federal bankruptcy court. The bankrupt owed TVB approximately $93,000 on the date the Chapter 13 bankruptcy was filed.[2] After preliminary questions on the debtor's bankruptcy plan were resolved, the debtor's amended Chapter 13 bankruptcy plan was confirmed by the bankruptcy court on August 24, 1982. This plan established the legal relationship between TVB and the debtor and awarded TVB $93,210.98, but made no mention of interest.

Two days later, on August 26, 1982, Killen sent TVB a letter reporting the results of the confirmation hearing, stating, "The amounts allowed to us will draw interest at the rate provided in 26 U.S.C. 6621, which is the interest rate the IRS draws...." TVB relied upon Killen's representation in this letter. Over a year later, in 1983, a dispute arose between TVB, the bankrupt and the trustee, regarding the amended bankruptcy plan and whether TVB was entitled to post-confirmation interest.[3] On

---

tice or for personal injuries.—Within two (2) years:

....

"(4) An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; ... *the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer,....* The term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code." (Emphasis added.)

**2.** The bankrupt in this case filed under Chapter 13 of the Bankruptcy Reform Act of 1978. When the bankrupt filed for bankruptcy, all of the bankrupt's creditors were restrained from taking further actions to collect their claims. *See* 11 U.S.C. § 362. A trustee is appointed by the bankruptcy court. The debtor must submit a Chapter 13 plan which, at a minimum, must provide for full payment for all claims which are entitled to priority. *See* 11 U.S.C. § 507. Unsecured creditors may be paid full value, or less than the full value of their claims, under a Chapter 13 plan. Chapter 13 plans are generally limited to a three-year period in which a creditor may be paid in installments. *See* 11 U.S.C. § 1322(c). The bankruptcy court, and not the creditors, has final approval of a bankrupt's proposed Chapter 13 plan. A judicial approval takes the form of a confirmation hearing. *See generally* 11 U.S.C. §§ 1324, 1325 (this section sets forth the standards for judicial confirmation of Chapter 13 plans). Once a Chapter 13 plan has been confirmed, it is binding on both the bankrupt and the bankrupt's creditors. 11 U.S.C. § 1327(a). The plan is then put into effect, and creditors will be paid in installments by the trustee. *See generally* 5 Collier on Bankruptcy ¶ 1300.01 *et seq.* (L. King, 15th ed. 1986).

**3.** The Federal Bankruptcy Act bars the allowance of interest not yet earned or matured as of the date the bankrupt files for Chapter 13 bankruptcy. 11 U.S.C. 502(b)(2). However, a creditor can be entitled to post-confirmation interest on a secured debt when the debtor retains pos-

November 16, 1983, TVB, represented by new counsel, filed a motion with the bankruptcy court to clarify the question of its entitlement to post-confirmation interest under the amended plan, which was silent on the subject of interest. On December 12, 1983, the bankruptcy judge held a hearing on TVB's claim and denied the claim for post-confirmation interest, stating that TVB was required to make any such claim prior to August 24, 1982, when the bankruptcy plan was confirmed.

This Court has dealt with the question of professional malpractice in a number of recent cases. These cases point out that while I.C. § 5–219(4) provides that "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of ...," nevertheless until some damage occurs no cause of action accrues for professional malpractice, even though the "occurrence, act or omission complained of," which ultimately causes the damages, has occurred earlier. *Mack Financial Corp. v. Smith,* 111 Idaho 8, 720 P.2d 191 (1986); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1985); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984). The question in this case is whether or not Treasure Valley Bank unquestionably suffered some monetary damage on August 24, 1982, the date of confirmation of the plan, or whether there is a material issue of fact over whether damage, if any, occurred at some later date. The trial court concluded that damage occurred, and the statute began to run on August 24, 1982. We agree.

On August 24, 1982, the bankruptcy court confirmed the amended Chapter 13 plan which fixed the rights and obligations of the parties. The August 24th ruling was reaffirmed on December 12, 1983, when the bankruptcy court denied TVB's claim for post-confirmation interest and stated that such claim was not included in the amended Chapter 13 plan approved at the August 24, 1982, confirmation hearing. As a matter of federal law, TVB lost its opportunity to secure post-confirmation interest on the secured claim on August 24, 1982, and that is the date upon which damage occurred. The bankruptcy court in its December 12, 1983, hearing did not adjudicate TVB's right to interest, but instead simply confirmed that the amended plan approved on August 24, 1982, had adjudicated that right, and the court on December 12, 1983, refused to amend the plan.

Accordingly, the district court did not err in granting the summary judgment. The two-year statute of limitations for professional malpractice set forth in I.C. § 5–219(4) ran from the August 24, 1982, date that the bankruptcy plan was adopted and the date upon which TVB suffered some damage which commenced the running of the statute of limitations.

For the foregoing reasons, the decision of the district court is affirmed. Costs to respondents.

SHEPARD, C.J., and DONALDSON and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The majority nicely frames the issue: "The question in this case is whether or not Treasure Valley Bank unquestionably suffered some monetary damage on August 24, 1982, the date of confirmation of the plan, or whether there is a material issue of fact over whether damage, if any, occurred at some later date." *Ante* at p. 328. However, I cannot agree with the majority's answer to that question.

To decree that the Bank unquestionably suffered monetary damage at the confirmation hearing is to hold the client to the standard of a bankruptcy lawyer. This the majority does not hesitate to do: "As a matter of federal law, TVB lost its opportu-

---

session of the collateral and pays off the claim in installments set out in the plan. 5 Collier on Bankruptcy ¶ 1300.73(2). TVB's claim to interest in this case rests on this concept. The amended Chapter 13 plan called for the bank-

rupt to pay off its debt to TVB in installments. Since the amended Chapter 13 plan was designed to operate for 36 months, the interest on the principal during this time would constitute a substantial sum.

nity to secure post-confirmation interest on the secured claim on August 24, 1982, and that is the date upon which damage occurred." *Ante* at p. 328. How was the Bank to know "as a matter of federal law" that it might be damaged by its attorney's failure to specify, in unambiguous terms, its desire for post-confirmation interest in the document spelling out the debtor's repayment plan? To charge the client with such knowledge of federal law is particularly unrealistic here where the attorney, only two days after the confirmation hearing, wrote to the Bank assuring that it would receive interest.

Until today, the "date of damage" rule had been applied reasonably consistently by this Court in the recent cases of *Mack Financial, Streib, Blake,* and *Stephens.* Now the trial bench and bar will be left guessing how to advise their clients based on our zig-zag interpretation of I.C. § 5–219(4).

The rationale for the "date of damage" rule is two-fold. First, it is axiomatic that no cause of action in negligence, such as professional malpractice, can accrue until all essential elements of the claim, including damages, have occurred. Chief Justice Shepard analyzed this point extremely well in *Streib.* Second, damages must have occurred so that the Bank is put on notice that action is required within a definite time period; otherwise, it will be viewed as having "slept on its rights." *See Mack Financial Corp. v. Smith,* 111 Idaho at 11, 720 P.2d at 194 (1986).

Applying these principles to the case at hand, it is apparent the matter must be remanded to the district court for a determination of the date when the Bank first received a payment from the debtor which it knew or should have known did not include interest. Neither the record nor the briefs reveal precisely when those no-interest payments began. The date of the first such payment would satisfy both prongs of the date of damage rationale discussed above. Obviously, it is the date when monetary damages began. Equally clear is that this date would be the earliest point

that the Bank conceivably could be said to be on notice that it might have a claim against its attorney for failing to ensure that interest would be included in the confirmation plan.

In contrast, the date chosen by the majority is merely the date the alleged negligent act of the attorney occurred. Thus, the majority creates an unacceptable conflict with *Streib* which should control our decision here. In *Streib* the injured party suffered no monetary damage until served with a notice of tax deficiency. Here Treasure Valley Bank did not suffer damage until it began receiving payments minus interest. Therefore, our better action would be to remand to the district court to determine that crucial date.