835 P.2d 1293

Father R. Denis CHICOINE, Sister Mary Bernadette Janet Urban, Alvina Urban, and Christ the King Priory Inc., an Idaho corporation, Plaintiffs–Appellants,

v.

Bliss O. BIGNALL, Jr., and Annette R. Bignall, husband and wife, Defendants–Respondents.

No. 19113.

Supreme Court of Idaho,
Boise, March 1992 Term.

Aug. 10, 1992.

Kaiser and Douglas, Spokane, Washington, for plaintiffs-appellants. Russell K. Jones, argued.

Evans, Craven & Lackie, P.S., Coeur d'Alene, Idaho, for defendants-respondents. Jarold P. Cartwright, argued.

JOHNSON, Justice.

This is a legal malpractice case. The issue presented is whether the two-year statute of limitations contained in I.C. § 5–219(4) barred the claim. We hold that the claim is not barred by the statute of limitations. Objectively ascertained, none of the damage caused by the lawyer's negligence occurred more than two years prior to the filing of the action.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Bliss O. Bignall, a lawyer, represented Father R. Denis Chicoine and several other persons associated with Christ the King Priory, Inc. (referred to collectively as Chicoine) in a lawsuit brought against them by Jerry Bryant O'Neil and his children. In 1983, a jury awarded damages against Chicoine. Bignall filed a timely motion for judgment notwithstanding the verdict (j.n.o.v.) on behalf of Chicoine. Later, Bignall filed a motion for new trial. The trial court granted Chicoine's motion for j.n.o.v. On O'Neil's appeal, this Court reversed the trial court's order. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1986) (*O'Neil I*).

Following the remand directed in *O'Neil I*, the trial court considered and granted Chicoine's motion for new trial. On a second appeal by O'Neil, this Court reversed the trial court's order granting a new trial because Bignall had failed to serve the motion for new trial within the time allowed by I.R.C.P. 59(b) (1980) prior to the 1987 amendment to the rule. *O'Neil v.*

*Schuckardt,* 116 Idaho 507, 777 P.2d 729 (1989) (*O'Neil II*).

In December 1989, Chicoine brought this suit against Bignall for professional malpractice based on Bignall's late filing of the motion for new trial. Bignall moved for summary judgment on the ground that I.C. § 5–219(4) barred the action. The trial court granted summary judgment, ruling that Chicoine suffered some damage because of Bignall's negligence more than two years prior to the filing of the lawsuit. Chicoine appealed, asserting that the claim against Bignall did not accrue until this Court ruled in *O'Neil II* that Bignall's motion for new trial was not timely.

## II.

### THE "SOME DAMAGE" RULE.

Before determining whether the trial court correctly granted summary judgment in this case, we find it helpful to review the limits of the "some damage" rule the Court has employed in applying I.C. § 5–219(4). In the most recent legal malpractice case in which the Court applied this rule the Court said:

> Although not stated in the statute, this Court has interpreted the law to require "some damage" before the action accrues and the limitation period begins to run.

*Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991).

In *Bonz,* the Court traced the origin of the rule to *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), where the Court said:

> It is axiomatic that in order to recover under a theory of negligence, the plaintiff must prove actual damage. As a general rule "the statute of limitations does not begin to run against a negligence action until some damage has occurred." W. Prosser, Handbook of the Law of Torts § 30 (4th ed. 1971).

*Id.* at 254, 678 P.2d at 46.

In *Corbridge v. Clark Equip. Co.,* 112 Idaho 85, 730 P.2d 1005 (1986), the Court summarized the application of the "some damage" principle for cases to which I.C. § 5–219(4) applies:

> The interpretation of I.C. § 5–219(4) has caused this Court some difficulties over the years. The cases are too numerous to cite. However, we have *never held* that a statute of limitations may run before an aggrieved party suffers damages. The authority to do so is highly doubtful, since it is axiomatic that a party has no right to sue for damages until actual injury occurs.

*Id.* at 88–89, 730 P.2d at 1008–09 (emphasis in original).

To set the "some damage" rule in its full historical and jurisprudential context we turn to an earlier medical malpractice case, in which the Court reviewed the evolution of I.C. § 5–219(4) in relation to decisions of the Court:

> Prior to March 24, 1971, I.C. § 5–219(4), the statute of limitations applicable to professional malpractice actions, in essence provided that an action had to be filed within two years of the alleged professional malpractice; the statute made no reference whatsoever to the interrelationship between the accrual of a cause of action and knowledge of a cause of action. Without the benefit of legislative guidance, this Court adopted the so-called "discovery exception" in cases in which foreign objects were negligently left in a patient's body. In *Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964), we held that "the cause of action [in such cases] does not accrue until the patient learns of, or in the exercise of reasonable care and diligence should have learned of the presence of [the] foreign object in his body." *Id.* at 498, 389 P.2d at 232. In *Renner v. Edwards,* 93 Idaho 836, 475 P.2d 530 (1969), *aff'd on rehearing,* we extended the discovery rule to cases of misdiagnosis and held that the statute of limitations did not begin to run until the patient knew or should have known of the physician's misdiagnosis. However, soon after our decision in *Renner,* and perhaps partly in response thereto, the legislature substantially amended I.C. § 5–219(4). 1971 Idaho

Sess.Laws, ch. 180, § 1. By amending I.C. § 5–219(4), the legislature narrowed the scope of *Renner* and, in large part, defined when a cause of action accrues for the purposes of applying the statutory period of limitations in professional malpractice actions. Under amended I.C. § 5–219(4), the discovery exception first recognized by this Court in *Billings v. Sisters of Mercy of Idaho,* 86 Idaho 485, 389 P.2d 224 (1964), is limited to cases involving foreign objects and fraudulent concealment. In all other professional malpractice actions, "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of. . . ." The action must be brought within two years of that time.

*Holmes v. Iwasa,* 104 Idaho 179, 181–82, 657 P.2d 476, 478–79 (1983) (footnotes omitted).

To complete the history of the Court's interpretation of the predecessor of the current I.C. § 5–219(4), we also note that under that version the Court "expressly decline[d] to create a new 'discovery' exception for legal malpractice actions." *Martin v. Clements,* 98 Idaho 906, 910, 575 P.2d 885, 889 (1978). In *Martin,* the Court ruled that the cause of action against an attorney for negligence in probating a will accrued on the date of the decree of distribution, rather than eighteen years later when the decedent's heirs discovered the lawyer's negligence. In commenting on the significance of *Martin* in *Stephens,* 106 Idaho at 255 n. 1, 678 P.2d at 47 n. 1, the Court said: "[W]e note that the cause of action in *Martin* began to run at the time of the negligent act because damage occurred immediately at that time."

In a recent legal malpractice case, we pointed out:

[I]n *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985), this Court extended the date for the accrual of actions for professional malpractice where the negligence is continuing, until the date that damage occurred.

In *Streib,* an accountant had negligently prepared income tax returns for taxpayers, claiming certain deductions that were not allowable. The taxpayers filed an action against the accountant more than two years after the last return was prepared. The accountant moved for summary judgment on the basis of I.C. § 5–219(4). This Court held that the action for professional malpractice accrued when the Internal Revenue Service assessed the taxpayers for penalties and interest due to the deductions that were not allowable. The Court characterized the negligence of the accountant as "continuing in nature until [the taxpayers] suffer damage." 109 Idaho at 179, 706 P.2d at 68. The assessment by the IRS was considered by the Court to be the date when damage to the taxpayers occurred. The taxpayers were allowed two years after that date within which to file their action against the accountant.

*Griggs v. Nash,* 116 Idaho 228, 232–33, 775 P.2d 120, 124–25 (1989).

In *Griggs,* the plaintiffs based their claims against the lawyer on the lawyer's alleged failure to: (1) clear the title to property, and (2) inform one of the clients of an appraised value of the property. For each of these claims, the Court determined that the lawyer's alleged negligence did not cause any damage until the clients incurred attorney fees to defend lawsuits brought against them because of the alleged negligence. *Id.* at 233–34, 775 P.2d at 125–26. Based on this analysis, the Court concluded that the action of the clients against the lawyer did not accrue under I.C. § 5–219(4) until the damage occurred.

In *Bonz,* the defendant lawyers had represented clients whose property was the subject of a lis pendens. When the dispute over the property was settled the lawyers recorded a release of lis pendens in the wrong county. This resulted in the lis pendens remaining of record in the county where the clients' property was located. The Court held that some damage did not occur until a third-party investor discovered the lis pendens on the clients' property and subsequently decided not to invest in development of the property. 119 Idaho at 540, 808 P.2d at 877.

Perhaps most pertinent to this case is the legal malpractice case of *Treasure Valley Bank v. Killen & Pittenger*, 112 Idaho 357, 732 P.2d 326 (1987). In *Treasure Valley*, the Court succinctly stated the circumstances presented:

The facts in this case were stipulated by the parties for the purpose of the summary judgment motion. William Killen represented TVB in a Chapter 13 bankruptcy proceeding initiated by one of TVB's debtors. Killen's duties required him to file TVB's claims with the federal bankruptcy court. The bankrupt owed TVB approximately $93,000 on the date the Chapter 13 bankruptcy was filed. After preliminary questions on the debtor's bankruptcy plan were resolved, the debtor's amended Chapter 13 bankruptcy plan was confirmed by the bankruptcy court on August 24, 1982. This plan established the legal relationship between TVB and the debtor and awarded TVB $93,210.98, but made no mention of interest.

Two days later, on August 26, 1982, Killen sent TVB a letter reporting the results of the confirmation hearing, stating, "The amounts allowed to us will draw interest at the rate provided in 26 U.S.C. 6621, which is the interest rate the IRS draws...." TVB relied upon Killen's representation in this letter. Over a year later, in 1983, a dispute arose between TVB, the bankrupt and the trustee, regarding the amended bankruptcy plan and whether TVB was entitled to post-confirmation interest. On November 16, 1983, TVB, represented by new counsel, filed a motion with the bankruptcy court to clarify the question of its entitlement to post-confirmation interest under the amended plan, which was silent on the subject of interest. On December 12, 1983, the bankruptcy judge held a hearing on TVB's claim and denied the claim for post-confirmation interest, stating that TVB was required to make any such claim prior to August 24, 1982, when the bankruptcy plan was confirmed.

... The question in this case is whether or not Treasure Valley Bank unquestionably suffered some monetary damage on August 24, 1982, the date of confirmation of the plan, or whether there is a material issue of fact over whether damage, if any, occurred at some later date.

*Id.* at 358–59, 732 P.2d at 327–28 (footnotes omitted).

The Court then answered the ultimate question, which is similar to the question we must answer in this case:

The trial court concluded that damage occurred, and the statute began to run on August 24, 1982. We agree.

On August 24, 1982, the bankruptcy court confirmed the amended Chapter 13 plan which fixed the rights and obligations of the parties. The August 24th ruling was reaffirmed on December 12, 1983, when the bankruptcy court denied TVB's claim for post-confirmation interest and stated that such claim was not included in the amended Chapter 13 plan approved at the August 24, 1982, confirmation hearing. As a matter of federal law, TVB lost its opportunity to secure post-confirmation interest on the secured claim on August 24, 1982, and that is the date upon which damage occurred....

Accordingly, the district court did not err in granting the summary judgment. The two-year statute of limitations for professional malpractice set forth in I.C. § 5–219(4) ran from the August 24, 1982, date that the bankruptcy plan was adopted and the date upon which TVB suffered some damage which commenced the running of the statute of limitations.

*Id.* at 359, 732 P.2d at 328.

Despite the apparently straightforward formulation of the "some damage rule" in these cases, we must also attempt to harmonize *Osborn v. Ahrens*, 116 Idaho 14, 773 P.2d 282 (1989), with the principles outlined above. In *Osborn*, a notary public acknowledged the forged signature of a married woman, Mrs. Alexander, on a promissory note and a mortgage. Mrs. Alexander's husband had also signed the note and mortgage and his signature was properly acknowledged. After stating that the statute of limitations commenced run-

ning under I.C. § 5–219(4) when the injured party first sustained damage and that the statute might commence running even though the full extent of the damages was unknown or unpredictable, the Court said:

> [W]e view the instant case as presenting no facts indicating that the [injured parties] possessed any knowledge that they had been damaged by the negligent acts of [the notary] prior to the adjudication of [the action in which the injured parties sought a deficiency judgment against Mrs. Alexander based on the forged note and mortgage]. We view [the notary's] argument to be that the [injured parties'] damages occurred at the time of the forgery of Mrs. Alexander's signature, and its notarization by [the notary], regardless of the [injured parties'] lack of knowledge.... It is entirely possible that no damages, and hence no cause of action, would have arisen at any time if it had not been for the death of [Mrs. Alexander's husband]. It is entirely possible that were [Mrs. Alexander's husband] to have lived, he would have voluntarily or involuntarily fulfilled the obligation, and hence no damages to the [injured parties] would have accrued, and they would have had no cause of action.

*Id.* at 16, 773 P.2d at 284.

We view *Osborn* as limited to its special circumstances. We do not read *Osborn* as creating a discovery rule, nor as modifying the "some damage" rule. In *Osborn*, mortgagees sued the notary for acknowledging the forged signature of one of the purported mortgagors. In effect, *Osborn* spoke only to the lack of damage to the injured parties prior to their attempt to enforce the note and mortgage against Mrs. Alexander. Until the determination by the trial court that Mrs. Alexander's signature was a forgery, there had been no damage.

We are also concerned about the applicability to cases of legal malpractice of the "objectively ascertainable damage" standard that the Court has developed in medical malpractice cases. In *Davis v. Moran*, 112 Idaho 703, 735 P.2d 1014 (1987), the Court determined the application of I.C. § 5–219(4) to injuries resulting from radiation exposure, "which are initiated at one point in time, but by their very nature do not become manifest or fully developed until a later point in time because the destruction of tissue or development of cancer occurs much later." *Id.* at 709, 735 P.2d at 1020. In resolving the question in *Davis*, the Court turned to the "objectively ascertainable damage" standard:

> Our prior cases clearly hold that we do not apply a subjective test, based upon when the claimant knew or in the exercise of reasonable diligence should have known of the damage, because that would amount to a discovery rule which our prior cases have expressly rejected in light of the legislature's explicit rejection of the discovery rule, I.C. § 5–219(4). However, just as in *Streib v. Veigel*, [109 Idaho 174, 706 P.2d 63 (1985)], where we held that a flexible reading of I.C. § 5–219(4) was necessary to avoid an absurd result in that case, by the same token in cases involving alleged negligent radiation treatment a cause of action does not accrue until the fact of injury becomes objectively ascertainable.

*Id.*

In *Davis*, the Court noted that "[b]y [objectively ascertainable] we mean that objective medical proof would support the existence of an actual injury." *Id.* at 709 n. 4, 735 P.2d at 1020 n. 4.

In *Hawley v. Green*, 117 Idaho 498, 788 P.2d 1321 (1990), the Court applied the "objectively ascertainable damage" standard in a medical malpractice case where the doctors failed to diagnose a tumor. The issue presented was whether some damage occurred when the doctors failed to observe the tumor on x-rays, or only later when the patient began experiencing symptoms. The patient argued that the damage must be objectively ascertainable to the patient to commence the running of the statute of limitations pursuant to I.C. § 5–219(4). In rejecting the patient's argument, the Court stated that the patient's construction of when damage occurred "would reinstate a discovery rule." *Id.* at 503, 788 P.2d at 1326.

In holding that there was a genuine issue of material fact as to when damage occurred in *Hawley,* the Court said:

> The only facts that are established and uncontroverted in this record are that the tumor was evident on the X-rays taken between 1979 and 1983. There is no evidence in the record one way or another concerning whether during 1979–83 the tumor was progressive, malignant, harmful or in any manner dangerous at this point in time.

*Id.* at 504, 788 P.2d at 1327.

■ Although the Court developed the "objectively ascertainable damage" standard in medical malpractice cases, I.C. § 5–219(4) applies to all actions for "professional malpractice." We see the "objectively ascertainable damage" standard as providing us with an additional analytical tool to use in determining when "some damage" has occurred in all types of professional malpractice cases.

■ Harmonizing the "some damage" rule and the "objectively ascertainable damage" standard, we conclude that an action for professional malpractice shall be deemed to have accrued for the purposes of I.C. § 5–219(4) only when there is objective proof that would support the existence of some actual damage. This harmonization provides a means of explaining the results in each of the legal malpractice actions in which the Court has applied I.C. § 5–219(4).

In *Treasure Valley,* there was objective proof of some actual damage when the bankruptcy court confirmed the amended Chapter 13 bankruptcy plan without a provision for interest. As a matter of law, the bank could not collect interest after that date. 112 Idaho at 359, 732 P.2d at 328. The existence of actual damage did not depend on the bank knowing that it would not receive interest.

In *Griggs,* there was objective proof of some actual damage when the clients incurred attorney fees in lawsuits that resulted because of alleged malpractice of the lawyer. 116 Idaho at 233–34, 775 P.2d at 125–26. The existence of the damage did not depend on the outcome of the lawsuits, since only "some damage" is necessary for the action to accrue under I.C. § 5–219(4).

In *Bonz,* there was objective proof of some actual damage when the investor withdrew financial support after learning of the cloud on the clients' property caused by the lis pendens that the lawyers had failed to release. 119 Idaho at 543, 808 P.2d at 880. The existence of the damage did not depend on the clients' knowledge that the lis pendens had not been released.

## III.

### THE ACTION AGAINST BIGNALL DID NOT ACCRUE UNTIL THIS COURT REVERSED THE ORDER FOR NEW TRIAL IN *O'NEIL II.*

■ Chicoine asserts that the action against Bignall did not accrue pursuant to I.C. § 5–219(4) until July 1989, when this Court reversed the trial court's granting of a new trial. We agree.

Employing the analysis we have discussed above, we conclude that there was no objective proof of some actual damage to Chicoine until this Court reversed the order granting a new trial in *O'Neil II.* Until then, the order granting the new trial, in effect, protected Chicoine from any damage. So long as the trial court's order stood, Chicoine was entitled to a new trial, despite the untimeliness of the motion.

Chicoine was required by I.C. § 5–219(4) to file this action within two years of the finality of *O'Neill II.* The Court denied rehearing in *O'Neil II* and issued the remittitur on August 25, 1989. Chicoine filed this action on December 5, 1989.

## IV.

### CONCLUSION.

We reverse the summary judgment granted to Bignall by the trial court and remand the case for further proceedings.

We award costs to Chicoine. Chicoine did not request attorney fees.

BAKES, C.J., BISTLINE and McDEVITT, JJ., and REINHARDT, J., Pro Tem., concur.