51 P.3d 396

**Mark W. LAPHAM, Plaintiff–Appellant,**

v.

**Michael C. STEWART, Defendant–Respondent.**

No. 26790.

Supreme Court of Idaho, Boise, April 2002 Term.

July 12, 2002.

John F. Magnuson, Coeur d'Alene, for appellant.

Moffatt Thomas Barrett Rock & Fields, Chtd., Boise, for respondent. Mark S. Prusynski argued.

EISMANN, Justice.

This is an appeal from a summary judgment dismissing a complaint for legal malpractice on the ground that the claim was barred by the statute of limitations. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In 1995 Mark Lapham was a private lender living in California who made residential and commercial real estate loans. For approximately ten years prior to that time, his father had operated a similar business in northern Idaho, making hundreds of residential and commercial loans. In mid 1995 Lapham's father became aware that two brothers Kimlee and Walter Mangus wanted to obtain a loan of approximately $30,600 in order to finance improvements to a residence they owned. Lapham's father inspected the Mangus property and concluded that it was worth approximately $85,000, that it was subject to a deed of trust securing a loan with an unpaid balance of approximately $75,000, and that it would have a value of approximately $150,000 after the improvements were made. The Manguses hoped to obtain a short-term loan to make the improvements and then obtain institutional financing to pay the balance owing on that loan.

Lapham's father told him about the Manguses' desire for a loan and the circumstances concerning the property. Because the property did not have sufficient equity to fully secure the requested loan, Lapham's father recommended that the loan should be treated as a construction loan with the funds disbursed in a manner to insure that they were used to pay for the improvements to the property. Lapham decided to make the

loan and asked his father to act as his agent in closing the transaction.

Lapham's father contacted the defendant Michael Stewart, an attorney whom he had used to close in excess of 100 loan transactions. Lapham's father asked Stewart to prepare loan documents reflecting a gross loan amount of $34,000, net loan proceeds of $30,600, and a one-year loan term. The loan was to be secured by a second deed of trust, and the documents were to include a provision that the loan proceeds would be disbursed only upon the approval of Lapham's father, acting as agent for Lapham. Stewart's secretary prepared a promissory note and deed of trust using forms drafted by Stewart. The promissory note did not include a provision stating how the loan proceeds were to be disbursed.

The loan was closed on July 12, 1995, at Stewart's office. He was not present, but was represented by his secretary. At the closing, Lapham's father told Stewart's secretary that the loan was to be treated as a construction loan and that the funds were to be disbursed only upon his approval. He stated that when the Manguses wanted funds they would contact Stewart's office, that after inspecting the house Lapham's father would approve a disbursement, and that Stewart's office would then disburse that amount of funds to the Manguses. At the closing, the net loan proceeds of $30,216 were delivered to Stewart's secretary for deposit into Stewart's trust account. The next day, Stewart's secretary disbursed that entire sum to the Manguses without the approval or knowledge of either Lapham or his father.[1]

The promissory note required the Manguses to make monthly payments of $500, commencing on August 12, 1995. The Manguses made those payments until January 1996, when they failed to make the payments due in January and February and paid only $150 in March. They did not make any further payments. The Manguses also failed to make the payments due on the first deed of trust. During the summer of 1997, that deed of trust was foreclosed, and Lapham's father

---

1. Stewart's secretary contends that Lapham's father authorized the disbursement of the funds. Because the case was decided upon summary judgment, we state the factual allegations in the record that are favorable to Lapham.

purchased the property at the trustee sale, thereby extinguishing the lien of Lapham's second deed of trust.

On July 7, 1998, Lapham brought this action against Stewart seeking to recover damages for legal malpractice based upon the unauthorized disbursement of the loan proceeds. On September 28, 1998, Stewart moved to dismiss on the ground that the action was barred by the statute of limitations, Idaho Code § 5–219(4). Because matters outside the complaint were considered, the district court treated the motion as a motion for summary judgment. IDAHO R. CIV. P. 12(b). The district court determined that there were material issues of fact in dispute and denied the motion.

The parties engaged in discovery, and on May 8, 2000, Stewart again moved for summary judgment. The parties stipulated that the motion would be heard on July 13, 2000. On July 7, 2000, Lapham moved to file an amended complaint alleging four causes of action (professional negligence, negligence, breach of fiduciary duty, and breach of contract), all premised upon the unauthorized disbursement of the loan proceeds. The district court granted the motion for summary judgment and denied the motion to file an amended complaint. The district court concluded that the two-year statute of limitations began to run in January 1996 because at that time Lapham suffered some damage when the Manguses failed to make the monthly payment. The district court also held that Lapham could not avoid the two-year statute of limitations for professional negligence by seeking to characterize his

cause of action as ordinary negligence, breach of fiduciary duty, or breach of contract. The district court dismissed the complaint, and Lapham appealed.

## II. ANALYSIS

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Eagle Water Company, Inc. v. Roundy Pole Fence Company, Inc.*, 134 Idaho 626, 7 P.3d 1103 (2000). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Morrison v. Young*, 136 Idaho 316, 32 P.3d 1116 (2001).

**A. Did the district court err in ruling that the plaintiff's claim for professional malpractice was barred by the statute of limitations?**

An action to recover damages for "professional malpractice" must be commenced within two years after the cause of action has accrued. IDAHO CODE §§ 5–201 & 5–219 (1998).[2] Except for actions based

---

**2.** *Idaho Code § 5–201 provides:*

**5–201. Limitations in general.**—Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute.

Idaho Code § 5–219(4) provides:

**5–219. Actions against officers, for penalties, on bonds, and for professional malpractice or for personal injuries.**—Within two (2) years:

. . . .

4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including

any such action arising from breach of an implied warranty or implied covenant; provided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the fact of damage has, for the purpose of escaping responsibility therefore, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the

upon leaving a foreign object in a person's body or where the fact of damage has been fraudulently and knowingly concealed,[3] the cause of action for professional malpractice accrues "as of the time of the occurrence, act or omission complained of," IDAHO CODE § 5–219 (1998), although there must also be some damage for the cause of action to accrue. *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989). The limitation period is not extended by reason of any continuing consequences or damages resulting from the malpractice or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer. IDAHO CODE § 5–219 (1998).

■ In this case, the occurrence or act complained of was the unauthorized disbursement of the loan proceeds on July 13, 1995, by Stewart's secretary. The issue is when Mark Lapham suffered some damage from that disbursement. He argues that he did not suffer some damage until July 12, 1996, when the unpaid balance of the loan became due.

■ The basis of the "some damage" requirement is that in order to have a cause of action to recover damages, the plaintiff must prove that he or she suffered some damage, *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984), or at least is entitled to recover nominal damages, *Bonner v. Roman Catholic Diocese of Boise,* 128 Idaho 351, 913 P.2d 567 (1996). Until some damage occurs, a cause of action for professional malpractice does not accrue. *Treasure Valley Bank v. Killen & Pittenger, P.A.,* 112 Idaho 357, 732 P.2d 326 (1987). Therefore, some damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues.

■ In this case, however, Lapham had a cause of action against Stewart when Lapham's funds were disbursed from Stewart's trust account without Lapham's consent and contrary to his express instructions. At that point, Lapham was damaged in the sum of $30,216. He could have sued Stewart to recover those funds. That the Manguses may have repaid the funds in the future would not toll or delay the running of the statute of limitations. As stated in *Figueroa v. Merrick,* 128 Idaho 840, 844, 919 P.2d 1041, 1045 (Ct.App.1996), "The mere hope that the loss may be recovered from another party in the future does not toll the statute of limitation for malpractice."

■ Lapham also argues that a cause of action for professional malpractice does not accrue until the damage becomes "objectively ascertainable," which he construes to mean when Lapham had "objectively verifiable proof that he had been damaged." He argues that because Lapham did not learn of facts showing that he had been damaged until after July 12, 1996, his damage was not objectively ascertainable, and his cause of action could not have accrued, prior to that

exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho. This subsection shall not affect the application of section 5–243, Idaho Code, except as to actions arising from professional malpractice. Neither shall this subsection be deemed or construed to amend, or repeal section 5–241, Idaho Code.

3. Lapham has not argued that Stewart's failure to inform him of the disbursement of Lapham's funds from Stewart's trust account constituted fraudulently and knowingly concealing the allegedly wrongful disbursement sufficient to toll the running of the statute of limitations. It may be that he learned of the disbursement more than one year prior to filing the lawsuit, and it would therefore still be barred. IDAHO CODE § 5–219(4) (1998).

date. The standard that damages be "objectively ascertainable" does not mean that the fact of damage must have been known to the injured party, or that it must have been ascertainable from facts known by the injured party.

This Court first mentioned the "objectively ascertainable" standard in *Davis v. Moran*, 112 Idaho 703, 735 P.2d 1014 (1987), in which the plaintiff sought to recover damages arising from radiation treatment she had received over two years earlier in connection with treatment for breast cancer. She contended that the negligent administration of the radiation treatment caused a spinal cord cancer. The evidence showed that damage from the excessive radiation was not detectable at the time it occurred. It would only be detectable once it had progressed to the point that there was a functional defect, and its symptomology, which may not occur until years after the exposure. This Court therefore held that the cause of action for the allegedly negligent radiation treatment did not accrue until the fact of injury became objectively ascertainable. When so holding, this Court made it clear that by utilizing the "objectively ascertainable" standard, it was not adopting a discovery exception for the running of the statute of limitations.

> Our prior cases clearly hold that we do not apply a subjective test, based upon when the claimant knew or in the exercise of reasonable diligence should have known of the damage, because that would amount to a discovery rule which our prior cases have expressly rejected in light of the legislature's explicit rejection of the discovery rule, I.C. § 5–219(4). However, just as in *Streib v. Veigel*, [109 Idaho 174, 706 P.2d 63 (1985)] *supra*, where we held that a flexible reading of I.C. § 5–219(4) was necessary to avoid an absurd result in that case, by the same token in cases involving alleged negligent radiation treatment a cause of action does not accrue until the fact of injury becomes objectively ascertainable.

112 Idaho at 709, 735 P.2d at 1020. In a footnote to the above-quoted statement, this Court stated, "By this, we mean that objec-

tive medical proof would support the existence of an actual injury."

This Court has not limited the "objectively ascertainable damage" standard to medical malpractice cases. It applies to all types of professional malpractice. *Chicoine v. Bignall*, 122 Idaho 482, 835 P.2d 1293 (1992). That standard is not separate and distinct from the requirement that there be some damage before a cause of action accrues, however. The "objectively ascertainable damage" standard is simply an additional analytical tool to be used in determining when "some damage" has occurred. *Id.* Whether there was some damage, or whether that damage was objectively ascertainable, does not depend upon the knowledge of the injured party. *Id.* To require that the fact of damage must be objectively ascertainable to the injured party would simply reinstate a discovery rule, which the legislature has rejected. *Hawley v. Green*, 117 Idaho 498, 788 P.2d 1321 (1990).

In this case, there is no evidence showing that the damage caused by the disbursement of the loan proceeds was not objectively ascertainable at the time it occurred. There would have been bank records or records maintained by Stewart that would have shown the payment made to the Manguses.

Lapham also argues that this case is governed by *Osborn v. Ahrens*, 116 Idaho 14, 773 P.2d 282 (1989). In the *Osborn* case, a husband and wife purportedly executed a promissory note and mortgage in order to purchase a parcel of real property on behalf of two brothers, who were to pay the purchase price. The husband died, and the brothers eventually stopped making the payments on the property, which had decreased in value. When the sellers brought a lawsuit to recover the balance owing, they discovered that the wife's purported signatures on the mortgage and promissory note had been forged. They then brought an action against the attorney who had notarized her purported signatures. They recovered a judgment, and the attorney appealed, arguing that the sellers' claim was barred by the statute of limitations, Idaho Code § 5–219(4), because the action was brought more than two years after the attorney had notarized the wife's

purported signatures. In holding that the claim was not barred by the statute of limitations, this Court noted that the sellers did not have notice of the forgery or knowledge that they had been damaged by it. The *Osborn* case should not be read as holding that the statute of limitations does not begin to run until the injured party learns of the wrongful conduct or the resulting damage. As we stated in *Chicoine v. Bignall,* 122 Idaho 482, 486, 835 P.2d 1293, 1297 (1992):

> We view *Osborn* as limited to its special circumstances. We do not read *Osborn* as creating a discovery rule, nor as modifying the "some damage" rule. In *Osborn,* mortgagees sued the notary for acknowledging the forged signature of one of the purported mortgagors. In effect, *Osborn* spoke only to the lack of damage to the injured parties prior to their attempt to enforce the note and mortgage against Mrs. Alexander. Until the determination by the trial court that Mrs. Alexander's signature was a forgery, there had been no damage.

In the instant case, Lapham suffered some damage when his funds were allegedly wrongfully disbursed to the Manguses. Because Lapham did not file this lawsuit until more than two years later, his claim for professional malpractice is barred by Idaho Code § 5–219(4).

**B. Did the district court err in denying the plaintiff's motion to file an amended complaint?**

■ Prior to the hearing on Stewart's motion for summary judgment, Lapham moved to file an amended complaint alleging four causes of action (professional malpractice, negligence, breach of fiduciary duty, and breach of contract), all premised upon the alleged unauthorized disbursement of the loan proceeds. Lapham's motion to file an amended complaint was heard at the same time as Stewart's motion for summary judg-

ment. The district court denied the motion to file the amended complaint on the ground that the causes of action alleged therein were barred by the statute of limitations.

■ Rule 15(a) of the Idaho Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." A trial court does not abuse its discretion in denying a motion to file an amended complaint, however, if the claims alleged in the proposed amended complaint would be barred by the statute of limitations. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 804 P.2d 900 (1991).

The claim for professional negligence alleged in Lapham's proposed amended complaint is identical to the claim alleged in his original complaint. As stated above, that claim was barred by the Idaho Code § 5–219(4). The claim for negligence alleged that Stewart negligently disbursed the funds to the Manguses. The claim for breach of fiduciary duty alleged that Stewart breached his fiduciary duty by disbursing the funds to the Manguses. The claim for breach of contract alleged that by disbursing the funds to the Manguses, Stewart breached the terms of the escrow agreement between Lapham and him.

Lapham contends that the claims for negligence, breach of contract, and breach of fiduciary duty are distinct from his claim for professional malpractice and are not included within the scope of Idaho Code § 5–219(4).[4] That statute applies to "professional malpractice," which it defines as "wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation *licensed to perform such services under the law of the state of Idaho.*" (Emphasis added.) Lapham argues that when Stewart disbursed the funds to the Manguses, he was acting as "an escrow agent

---

4. "Professional malpractice" as used in Idaho Code § 5–219(4) is not limited to claims that are alleged as a negligence action. The statute provides that an action for professional malpractice also includes "any such action arising from breach of an implied warranty or implied covenant," both of which are actions for breach of contract. *Salmon Rivers Sportsman Camps, Inc.*

*v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306 (1975) (action to recover economic loss for breach of implied warranty is a contract action); *Beco Constr. Co., Inc. v. City of Idaho Falls,* 124 Idaho 859, 865 P.2d 950 (1993) (breach of an implied covenant is a contract action, not a tort action).

and/or escrow administrator," not as an attorney. Because no state license is required to disburse funds held in escrow, Lapham contends that Idaho Code § 5–219(4) does not apply to any cause of action based upon Stewart's conduct in disbursing the funds to the Manguses.

Stewart was not operating an escrow business separate from his legal practice. Lapham engaged Stewart as an attorney to provide professional services in connection with the proposed real estate loan. In order to provide those legal services, Stewart was asked to take various actions, including holding funds to disburse to the borrowers. Idaho Code § 5–219(4) applies to "wrongful acts or omissions in the performance of professional services by any person ... licensed to perform such services under the law of the state of Idaho." There is nothing in the statute indicating that each action taken in performing professional services should be examined to determine whether a license is required to perform that particular action. Rather, the focus is whether the alleged wrongful act or omission occurred in the course of performing professional services. Lapham retained Stewart to provide professional services as an attorney in preparing the loan documents and disbursing the loan funds. Because the causes of action alleged are based upon Stewart's allegedly wrongful disbursement of the loan funds while performing those professional services, Idaho Code § 5–219(4) is the applicable statute of limitations.

As part of the negligence claim alleged in the proposed amended complaint, Lapham also alleged that Stewart's secretary was negligent and that her negligence is imputed to Stewart under the doctrine of respondeat superior. Because legal secretaries are not required to be licensed under state law, Lapham argues that his cause of action against Stewart based upon the negligence of his secretary is not barred by Idaho Code § 5–219(4).

Lapham retained Stewart to provide professional legal services in connection with the loan transaction. To provide those professional services, Stewart delegated certain responsibilities to his employee—his legal secretary. An action against Stewart, based upon an allegedly wrongful act by his employee in carrying out the responsibilities he delegated to her, is an action for professional malpractice under Idaho Code § 5–219(4). The action arises out of the professional services that Stewart agreed to provide to Lapham. Therefore, the claim for negligence, even if alleged as respondeat superior, is barred by the statute of limitations.

### III. CONCLUSION

The district court did not err in holding that the claim alleged in Lapham's complaint is barred by the statute of limitations. Because the claims alleged in Lapham's proposed amended complaint were also barred by the statute of limitations, the district court did not err in denying Lapham's motion to file the amended complaint. We therefore affirm the judgment dismissing the complaint. Costs on appeal are awarded to the respondent.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.