894 P.2d 167

**B & K FABRICATORS, INC., an Idaho corporation, by and through its Trustee Robert Brown, and Robert Brown, Individually, Plaintiffs–Appellants,**

v.

**John SUTTON, Defendant–Respondent.**

**Docket No. 21379.**

Court of Appeals of Idaho.

April 6, 1995.

Rehearing Denied April 6, 1995.

Petition for Review Denied May 23, 1995.

---

2. In 1994, I.C. § 18–2407(1)(b) was amended to raise this threshold value to $300. 1994 Idaho Sess.Laws 1089, 1097–98.

Ellis, Brown and Sheils, Chtd., Boise, for plaintiffs-appellants. Allen B. Ellis argued.

Cosho, Humphrey, Greener & Welsh, Boise, for defendant-respondent. Rory R. Jones argued.

## SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED MARCH 3, 1995, IS HEREBY WITHDRAWN

LANSING, Judge.

This is an attorney malpractice case. At issue is the propriety of the district court's order granting summary judgment to the defendant on the ground that the applicable statute of limitation, I.C. § 5–219(4), had ex-pired prior to commencement of the action. We affirm.

## I. BACKGROUND

The circumstances giving rise to this case are complex, involving two prior civil actions, many details of which are not disclosed by the record before us. Insofar as can be discerned from the record on appeal, the circumstances leading up to this malpractice action are as follows. Defendant-respondent John Sutton represented B & K Fabricators, Inc., and its president and sole shareholder, Robert Brown, (hereinafter referred to collectively as "B & K") in a Nevada state court lawsuit in which B & K was a third-party defendant (the "damages action"). That action arose from a construction project in which B & K was a subcontractor. The third-party plaintiff, Water & Waste Equipment Company ("WWW") alleged that B & K failed to properly complete construction of a water tank.

B & K was insured under a liability insurance policy issued by Wausau Insurance Company ("Wausau"). After reviewing the policy, Sutton advised B & K in a January 30, 1986, letter that, in Sutton's opinion, the insurance policy did not cover the claim for unworkmanlike performance alleged against B & K in the damages action. Nonetheless, Sutton convinced Wausau to pay B & K's attorney fees and defense costs for that case.

Following a trial in May 1986, a judgment in excess of $300,000 was entered against B & K and in favor of WWW in the damages action.

On July 1, 1987, Employers Life Insurance Company filed a declaratory judgment action in the United States District Court for the District of Nevada against a number of parties to the damages action and their insurers, including B & K, WWW and Wausau.[1] Wausau retained Sutton to represent Wausau in the declaratory judgment action. Sutton apparently did not undertake to represent B &

---

1. The record does not include a copy of the complaint in the declaratory judgment action nor reveal the precise nature of the claim asserted by Employers Life Insurance Company. We infer that Employers was the liability insurer or performance bond surety for one of the defendants against whom judgment was rendered in the damages action, and that in the declaratory judgment action it sought a declaration that the defendants bore liability to contribute to or indemnify Employers for payment made by Employers with respect to the damages action.

K in the same case. Sutton prepared for Brown's signature an affidavit to be used in the declaratory judgment action.[2] This affidavit, which Brown signed on July 13, 1987, stated in essence that Brown did not then believe and had never believed that the Wausau insurance policy provided coverage for unworkmanlike performance such as that for which B & K was held liable in the damages action. In the affidavit, Brown said he understood that the policy was a general liability insurance policy covering B & K's liability for personal injury or property damage and was not in the nature of a performance bond which would guarantee the quality or completion of B & K's construction projects. In short, this affidavit effectively stated that Brown, as the president of B & K, did not believe that Wausau was obligated to pay the judgment rendered against B & K in the damages action.

A few months later the relationship between Brown and Sutton deteriorated for a number of personal and business reasons. Sutton, who had continued to represent B & K on matters other than the declaratory judgment action, resigned as B & K's counsel. B & K then retained attorney Allen Ellis to represent it in the declaratory judgment action. On the advice of Ellis, Brown signed a second affidavit in the declaratory judgment action on November 6, 1990. In this affidavit, Brown recanted the substance of the July 1987 affidavit. The second affidavit stated that Brown did not read the July 1987 affidavit before signing it and that statements in the 1987 affidavit were untrue. The second affidavit also implied that Brown believed the Wausau policy covered B & K's liability in the damages action, and asserted that in October 1985, B & K had assigned to WWW all of B & K's rights under the Wausau policy with respect to coverage for the claims against B & K in the damages action. In November 1990 when this second affidavit was signed, WWW was B & K's judgment creditor as a result of the damages action, and B & K's co-defendant in the declaratory judgment action. B & K and WWW, acting cooperatively, apparently took the position in the declaratory judgment action that WWW, as assignee of the insured's interest, was entitled to recover from Wausau the amount of the judgment it held against B & K. This claim of coverage was apparently predicated not upon the terms of the policy itself, but on Wausau's failure to adequately reserve its right to contest coverage when Wausau agreed to provide a defense for B & K in the damages action.

Wausau moved for summary judgment in the declaratory judgment action, contending that its policy provided no coverage for B & K or WWW with respect to the judgment awarded in the damages action. The parties took the unusual step of stipulating that an evidentiary hearing could be conducted on the summary judgment motion so the presiding United States magistrate could determine Brown's credibility relative to the conflicting statements in his affidavits. This was necessary because, as the issues were framed in that action, the coverage question turned upon whether Brown believed that the Wausau policy provided coverage for B & K's poor workmanship at the time Wausau agreed to provide a defense in the damages action. At the hearing on June 6, 1991, Brown testified at length regarding his relationship with Sutton and the circumstances under which Sutton allegedly induced Brown to sign the July 1987 affidavit. The federal magistrate thereafter issued a written report finding that Brown's attempted recantation of the July 1987 affidavit lacked credibility and recommending summary judgment in favor of Wausau.

The United States District Court adopted the magistrate's recommendation and in September 1991 granted summary judgment absolving Wausau of liability under its policy. WWW appealed this decision to the Ninth Circuit Court of Appeals, which affirmed the district court in an unpublished opinion issued March 29, 1993.

In July 1993, B & K initiated this legal malpractice action against Sutton, alleging that Sutton was negligent in preparing the

**2.** The record is unclear as to when Sutton undertook to represent Wausau. Sutton's affidavit in support of his summary judgment motion asserts that this representation did not commence until after Brown's execution of the July 13, 1987, affidavit.

July 13, 1987, affidavit. B & K seeks to recover from Sutton the amount of the judgment against B & K and in favor of WWW in the damages action.[3]

Sutton moved for summary judgment on several grounds, including his defense that the claim is barred by the applicable statute of limitation, I.C. § 5–219(4). The district court concluded the undisputed facts demonstrate that Brown's cause of action for legal malpractice accrued more than two years before his complaint was filed, and therefore granted summary judgment to Sutton based upon the statute of limitation defense. Brown appeals, asserting there exist genuine issues of material fact that preclude summary judgment.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In determining whether a genuine issue of material fact exists, all reasonable inferences must be drawn in favor of the party opposing the motion. *Tingley v. Harrison,* 125 Idaho 86, 89, 867 P.2d 960, 963 (1994); *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). If the record supports conflicting inferences, or if reasonable minds might reach different conclusions, summary judgment must be denied. *Id.*

It is the moving party's burden to show the absence of any genuine issue of material fact. *Tingley,* 125 Idaho at 89, 867 P.2d at 963. Nonetheless, once the movant has made a prima facie case demonstrating that, on the basis of uncontroverted facts, the movant is entitled to judgment, the opposing party may not rest on its pleadings or on mere speculation. Instead, the party resisting the motion must set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e); *Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 306, 698 P.2d 365, 368 (1985). "The opposing party's case must set forth the facts with particularity; for if general averments were sufficient the summary judgment procedure would lose its utility. The requirement of specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations." *Tingley,* 125 Idaho at 89, 867 P.2d at 963, *quoting Theriault,* 108 Idaho at 306, 698 P.2d at 368.

## III. ANALYSIS

The parties agree that Brown's claim is governed by I.C. § 5–219(4), which prescribes a two-year limitation period for professional malpractice actions. This statute provides that, "the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom . . . ." Nonetheless, it is well-established that a cause of action for malpractice does not accrue, and the limitations period does not begin to run, until the plaintiff suffers some damage resulting from the defendant's conduct. *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992); *Bonz,* 119 Idaho at 541, 808 P.2d at 878; *Griggs v. Nash,* 116 Idaho 228, 233, 775 P.2d 120, 125 (1989); *Streib v. Veigel,* 109 Idaho 174, 178, 706 P.2d 63, 67 (1985); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984).

The only negligent act of Sutton asserted by B & K on this appeal is Sutton's preparation of Brown's July 1987 affidavit disclaiming insurance coverage under the Wausau policy. Therefore, in light of the foregoing standards regarding accrual of the cause of action, the only question presented to this Court is whether B & K incurred damage as a consequence of that affidavit more than two

---

**3.** Although B & K continues to aver that its rights under the Wausau policy were assigned to WWW, B & K contends that it is the real party in interest to bring this malpractice action against Sutton because, but for Sutton's negligence, WWW would have been successful in collecting the judgment from Wausau. As a result of Sutton's negligence, according to B & K, that judgment remains unsatisfied and B & K remains liable to WWW for the full amount of the judgment.

years prior to the commencement of this action in July 1993.

B & K argues that it was not damaged as a result of the July 1987 affidavit until September 1991, when the judgment adverse to B & K was issued in the declaratory judgment action. We conclude, however, that B & K sustained damage earlier when it incurred attorney fees in connection with efforts to recant the July 1987 affidavit.

In *Griggs,* 116 Idaho at 234, 775 P.2d at 126, the Idaho Supreme Court held that clients suffered damage as a consequence of their lawyer's malpractice when they incurred attorney fees to defend an action brought against them because of the attorney's allegedly negligent act. In the present case, by November 1990, B & K's new attorney, Mr. Ellis, had provided legal services specifically attributable to Brown's execution of the July 1987 affidavit and his subsequent effort to disavow the affidavit's contents. Ellis reviewed and advised Brown to sign the November 6, 1990, affidavit, the purpose of which was to recant statements made in the July 1987 affidavit.[4] This legal service, for which B & K admits it was responsible to pay Ellis, was directly referable to Sutton's alleged negligence. B & K therefore had suffered damage from the asserted malpractice by November 6, 1990.

In addition, Ellis represented B & K at the evidentiary hearing before the United States magistrate on June 6, 1991, at which Brown testified. The primary reason for that hearing was to enable the magistrate to consider the discrepancies between Brown's July 1987 and November 1990 affidavits and determine Brown's credibility with respect to his contention that statements in the earlier affidavit were untrue and did not accurately express his own belief about B & K's insurance coverage. Brown testified at length at that hearing regarding Sutton's alleged misconduct which purportedly led Brown to sign the July 1987 affidavit without having first read it, and about Brown's belief that the Wausau policy provided coverage for the claims against B & K in the damages action not-

withstanding statements to the contrary in the July 1987 affidavit. In short, Brown's testimony at the hearing was devoted almost entirely to disavowal of the affidavit that he had signed in July 1987 at Sutton's behest. Therefore, the legal service provided by attorney Ellis in representing B & K at that hearing was directly attributable to Sutton's alleged malpractice.

B & K argues that attorney fees expended for the declaratory judgment action do not constitute damages from Sutton's malpractice because the malpractice did not spawn that litigation, and B & K would have been a party to the declaratory judgment action even if Sutton's alleged negligence had not occurred. We agree that merely incurring attorney fees for defense of the declaratory judgment action does not establish that B & K was damaged by the alleged malpractice. However, because of the existence of the July 1987 affidavit, B & K's new attorney took steps and provided services, and B & K became obligated for attorney fees, that would not otherwise have been necessary. Attorney Ellis' fees that related specifically to Brown's effort to disavow the July 1987 affidavit are damages attributable to Sutton's alleged malpractice, and B & K's cause of action against Sutton accrued when it became obligated to pay those fees. The statute of limitation on B & K's malpractice claim therefore began to run more than two years prior to commencement of this action.

B & K urges there was no certainty that it would be damaged until the federal district court issued its decision in the declaratory judgment case, for if B & K had prevailed in that action it might have been awarded attorney fees and thereby recouped the fees attributable to the July 1987 affidavit. We cannot agree that the mere hope of recovering its attorney fees from other parties in the declaratory judgment action tolled the statute of limitation for B & K's malpractice claim. A similar argument was rejected by our Supreme Court in *Fairway Development Co. v. Petersen,* 124 Idaho 866, 865 P.2d 957 (1993). In that case the Supreme Court held

---

4. Evidence submitted by Sutton in support of his summary judgment motion shows that the November 6, 1990, affidavit was prepared by the attorney for WWW, not by Ellis, but that Ellis reviewed the affidavit and advised Brown about it before Brown executed it.

that a client's cause of action for legal malpractice accrued when certain tax claims were dismissed by the district court as a consequence of an attorney's errors. The dismissal order had been appealed to and affirmed by the Supreme Court. In the subsequent malpractice action against the lawyer, the client contended that the statute of limitation on its malpractice claim did not begin to run until the conclusion of the appeal in the tax case, because its tax claims might have been revived on appeal. The Supreme Court held, however, that the possibility of the tax claims' revival on appeal did not diminish the conclusion that the client was damaged upon the district court's entry of the dismissal order. *Id.* at 869, 865 P.2d at 960. Similarly, we conclude that the mere possibility that B & K would recover its attorney fees from adverse parties in the declaratory judgment action did not alter the fact that B & K was damaged when those fees were incurred as a consequence of Sutton's alleged malpractice.

Because B & K's complaint in this action was filed more than two years after B & K initially suffered damage, the action is barred by I.C. § 5–219(4). Having determined that this action is barred by the statute of limitation, we need not address the alternative grounds for summary judgment urged by Sutton before the district court and on appeal.

Sutton requests attorney fees on appeal pursuant to I.C. § 12–121. We will award attorney fees under that statute only when we are "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Applying this standard, we decline to award attorney fees on appeal.

The judgment is affirmed. Costs to respondent.

WALTERS, C.J., and PERRY, J., concur.