919 P.2d 1041

Manuel A. FIGUEROA, Plaintiff–
Appellant,

v.

Gale MERRICK and Marcus, Merrick
& Montgomery, a partnership,
Defendants–Respondents.

No. 22262.

Court of Appeals of Idaho.

June 6, 1996.

Rehearing Denied July 11, 1996.

Petition for Review Denied Aug. 2, 1996.

Ellis, Brown and Sheils, Chtd., Boise, for appellant. Allen B. Ellis argued.

Quane, Smith, Howard & Hull, Boise, for respondents. Jeremiah A. Quane argued.

WALTERS, Chief Judge.

This appeal follows from the dismissal of a malpractice case brought by Manuel Figueroa, against his former attorney, Gale Merrick, and the law firm, Marcus, Merrick & Montgomery (respondents). Figueroa, the sole owner of Friendship Trucking Express (Friendship), alleged that respondents negligently failed to sue a debtor, H & H Bentonite (H & H), within the statutory period of limitation and negligently created a conflict of interest by simultaneously representing both Figueroa and H & H in a lawsuit against Kit–San Asuza Company (Kit–San). The district court granted summary judgment in favor of the respondents, holding that Figueroa's claim was barred by the two-year statute of limitation applicable to professional malpractice claims. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The background facts for this case appear in *Figueroa v. Kit–San Co.*, 123 Idaho 149, 845 P.2d 567 (Ct.App.1992) (*Figueroa I* ). The facts relevant to this appeal are as follows.

In 1984, Kit–San, a general contractor, won a contract to build a sewage treatment facility in St. Maries, Idaho. In order to build the lagoon, Kit–San was required to use a type of clay called bentonite, a natural sealant. H & H solicited Kit–San for the bentonite contract. Communications ensued between Kit–San and H & H, resulting in a confirmatory memorandum stating, "Delivered price is $80.00 per ton [i]ncluding freight less 2.00[sic] a ton discount if paid within 30 days." *Figueroa I*, 123 Idaho at 153, 845 P.2d at 571. H & H contacted Friendship about hauling the bentonite to St. Maries.

Thereafter, H & H mailed a formal contract proposal to Kit–San which varied from the oral agreement in that it segregated the product price from the freight charges and required that Kit–San pay Friendship directly. However, this proposed contract was never executed.

Between October 10 and October 31, 1984, Friendship transported over 900 tons of H & H's bentonite from Salina, Utah, to St. Maries, Idaho, for use by Kit–San. Kit–San then refused to pay H & H for the bentonite or Friendship for the shipping, asserting that the bentonite was unsuitable.

Figueroa and H & H hired the respondents to enforce their rights arising from the work at St. Maries. Figueroa and H & H filed complaints against Kit–San in February 1985 and March 1985, respectively, and their cases were consolidated. After the complaints against Kit–San were filed, Kit–San sent a letter to H & H dated May 10, 1985, denying liability for payment for the bentonite, and, by copy to Figueroa, advised him that it denied liability for the freight charges and that Figueroa should look to H & H for payment.

Following a court trial, a judgment was entered against Kit–San in July 1988. Figueroa was awarded $65,324.93 in principal, interest, and costs. However, the judgment in favor of Figueroa was reversed by this Court in July, 1992. *See Figueroa I, supra.* This Court held that no contract existed between Kit–San and Friendship. *Figueroa I*, 123 Idaho at 161, 845 P.2d at 579. Meanwhile, in December 1988, the four-year statute of limitation on Figueroa's claim against H & H had expired, *see* I.C. § 5–217, preventing him from suing H & H for the trucking fees.[1]

---

1. The parties to this case have proceeded upon the basis that I.C. § 5–217, rather than a limitation statute of some other state, applies to Figueroa's claim against H & H, although that issue has not been adjudicated in any judicial proceeding.

On April 7, 1993, Figueroa filed suit against the respondents, alleging that they were negligent in failing to recommend that Figueroa bring suit against H & H within the limitation period, and in allowing themselves to be placed in a professional situation where it would be a conflict of interest to recommend to Figueroa, their client, to sue H & H, also their client.

The respondents moved for summary judgment on two separate grounds: (1) that the statute of limitation on the malpractice action had elapsed and (2) as a matter of law, respondents did not commit malpractice. The district court initially rejected the statute of limitation defense and denied summary judgment.

The respondents then filed a motion for reconsideration, and alternatively, a motion to appeal by permission, both of which were denied. Subsequently, the respondents renewed their motion for summary judgment, which the district court granted. The district court held that the statute of limitation barred Figueroa's action against the respondents. The court also rejected Figueroa's assertion that the respondents were collaterally estopped from asserting a statute of limitation defense.[2] Figueroa appeals.

**ANALYSIS**

■ Summary judgment may be entered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All disputed facts will be liberally construed in favor of the nonmoving party. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991). The burden of proving the absence of a material fact rests upon the moving party. *Id.* If the record contains conflicting inferences upon which reasonable minds might reach different conclusions, a summary judgment must be denied because all doubts are to be resolved against the moving party. *Id.* Where there are no disputed facts with regard to the running of a statute of limitation, it is a question of law as to when the limitation period began. *Reis v. Cox*, 104 Idaho 434, 438, 660 P.2d 46, 50 (1983).

**A.   The Statute of Limitation, I.C. § 5-219(4).**

In granting the respondents' motion for summary judgment, the district court held that Figueroa's action for malpractice was barred by I.C. § 5-219(4). This statute provides that actions for professional malpractice must be brought within two years, and that "the cause of action shall be deemed to have accrued as of the time of the occurrence, act, or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom...."

■ Although not stated in I.C. § 5-219(4), our courts have interpreted the law to require "some damage" before the action accrues and the limitation period begins to run. *See Chicoine v. Bignall*, 122 Idaho 482, 483, 835 P.2d 1293, 1294 (1992); *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991); *B & K Fabricators, Inc. v. Sutton*, 126 Idaho 934, 937, 894 P.2d 167, 170 (Ct. App.1995). The reasoning is that "it is axiomatic that a party has no right to sue for damages until actual injury occurs." *Chicoine*, 122 Idaho at 483, 835 P.2d at 1294.

In the instant case, the district court held that Figueroa suffered "some damage" in December of 1988, when he lost the opportunity to sue H & H due to the expiration of the statute of limitation. Therefore, the court held, the limitation period for Figueroa's professional negligence action against the respondents expired in December of 1990, more than two years prior to the filing of Figueroa's complaint in April of 1993. In so holding, the district court distinguished *Chicoine*, which Figueroa asserts governs this case.

---

2. Having concluded that Figueroa's action against the respondents was barred by the statute of limitation, the district court did not rule on the respondents' second basis for summary judgment, that, as a matter of law, they did not commit malpractice. Therefore, we consider only the district court's ruling regarding the statute of limitation.

In *Chicoine*, Bliss Bignall, an attorney, represented Father R. Denis Chicoine and several others in a lawsuit brought against them. 122 Idaho at 482, 835 P.2d at 1293. A jury awarded damages against Chicoine, and the district court subsequently granted Chicoine's motion for a new trial. *Id.* However, on appeal our Supreme Court reversed the order granting a new trial, on the ground that the motion was untimely. *Id.*

In December 1989, Chicoine brought a malpractice claim against Bignall based on his late filing of the motion for a new trial. *Id.* at 483, 835 P.2d at 1294. The district court granted Bignall's motion for summary judgment, concluding that I.C. § 5–219(4) barred the action as Chicoine suffered some damage because of Bignall's negligence more than two years prior to the filing of the malpractice lawsuit. *Id.* On appeal our Supreme Court reversed, stating:

> [T]here was no objective proof of some actual damage to Chicoine until this Court reversed the order granting a new trial in *O'Neil II [O'Neil v. Schuckardt*, 116 Idaho 507, 777 P.2d 729 (1989)] . Until then, the order granting the new trial, in effect, protected Chicoine from any damage. So long as the trial court's order stood, Chicoine was entitled to a new trial, despite the untimeliness of the motion.

*Chicoine*, 122 Idaho at 487, 835 P.2d at 1298.

Here, the district court distinguished *Chicoine* on the basis that it involved only two causes of action—the underlying action and the malpractice action—whereas the instant case involves three: Figueroa's claim against Kit–San, Figueroa's action against H & H, and the malpractice claim. The court further stated:

> It is possible no objective proof will exist of damages at the time a negligent occurrence causes the loss of a cause of action, such as where the plaintiff in the malpractice action had obtained a favorable judgment as to *that particular cause of action in which the negligent occurrence arose,* and as was the case in *Chicoine.* It is not the case, however, that the statute of limitation for a malpractice suit is tolled by a favorable result in the litigation between Figueroa and Kit–San. The statute of lim-

itation on Figueroa's cause of action against H & H was not dependent upon the outcome of the appeal in *Figueroa v. Kit–San;* Figueroa's cause of action as to H & H was an independent, free-standing chose in action.

(Emphasis in original.)

Figueroa argues that the district court erred in concluding that this case is distinguishable from *Chicoine.* He argues that, like the order for a new trial in *Chicoine,* Figueroa's judgment against Kit–San "protected [him] from any damage" from the respondents' alleged negligence, and that he suffered no "objectively ascertainable damage" until reversal of that judgment by this Court in *Figueroa I.*

◼ Figueroa's reading of *Chicoine* paints too wide a stroke. We agree with the distinction drawn by the district court that in *Chicoine,* the client received a favorable judgment "as to that particular cause of action in which the negligent occurrence arose;" whereas in this case, the alleged negligence was with respect to a claim against another party, H & H, and was independent of the claim against Kit–San. Figueroa's argument rests on the premise that as long as he has recovered a monetary judgment in *some* action, even an improper action, his attorney is thereby unaccountable for bringing suit against the wrong party. However, a statute of limitation applicable to one defendant is not tolled based upon the plaintiff's suit against a different defendant. Each cause of action is controlled by its own statute of limitation period.

We cannot accept Figueroa's assertion that a judgment against the wrong defendant protects him from injury arising from the expiration of a statute of limitation in an action against the proper defendant. At the expiration of the statute of limitation for a lawsuit against H & H, Figueroa lost a valuable asset in the form of a cause of action against that party. The uncollected judgment against Kit–San did not prevent or eradicate that injury. If Kit–San had paid the judgment, then admittedly any injury from the respondents' failure to sue H & H would have been obviated, for Figueroa would not

have been entitled to collect the same debt from both Kit–San and H & H. However, until or unless the judgment was collected, the injury from the loss of a cause of action against H & H remained. The mere hope that the loss may be recovered from another party in the future does not toll the statute of limitation for malpractice. *B & K Fabricators, Inc. v. Sutton,* 126 Idaho at 938–39, 894 P.2d at 171–72.

If Figueroa's argument were accepted, and if Kit–San had neither appealed nor paid the judgment, Figueroa could have prevented commencement of the limitation period for the malpractice action indefinitely by repeatedly renewing the judgment against Kit–San. Such a result would be anomalous and inconsistent with the policy underlying statutes of limitation to prevent the litigating of stale claims. *See Renner v. Edwards,* 93 Idaho 836, 838–39, 475 P.2d 530, 532–33 (1970).

Next, Figueroa contends that had he sued H & H prior to this Court's opinion in *Figueroa I,* the defense of collateral estoppel would have resulted in a dismissal of the suit, as he already had a judgment in his favor and the issue of whether H & H or Kit–San was liable had already been adjudicated in the suit against Kit–San. This, Figueroa says, demonstrates that he suffered no damage at the moment when the statute of limitation on the claim against H & H expired in December 1988. This argument is also unpersuasive. Assuming that collateral estoppel would have prevented an action against H & H once a judgment had been issued against Kit–San (an issue that we do not decide), that collateral estoppel bar itself would have been a product of the respondents' alleged malpractice. Such a bar would only mean that the loss of the cause of action against H & H—and the commencement of the limitation period for a malpractice action against the respondents—occurred *earlier* than December 1988.

We hold that the district court did not err in concluding that "some damage" occurred in December 1988, when the limitation period for bringing an action against H & H expired, and that the two-year statute of limitation for a malpractice action against his at-torney therefore commenced at that point. Accordingly, the district court correctly held that Figueroa's malpractice action against the respondents was barred by the statute of limitation and properly granted summary judgment in the respondents' favor on this issue.

**B.   Equitable Estoppel**

Figueroa also argues that there was a triable issue of fact regarding whether the respondents were barred by the doctrine of equitable estoppel from raising the statute of limitation to defeat Figueroa's claim against the respondents. A defendant may be equitably estopped from asserting the statute of limitation "if his statements or conduct induced the plaintiff to refrain from prosecuting his action during the statutory limitation . period." *Zumwalt v. Stephan, Balleisen & Slavin,* 113 Idaho 822, 825, 748 P.2d 406, 409 (Ct.App.1987), *citing Twin Falls Clinic and Hospital v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982). The elements of equitable estoppel are (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) the party asserting estoppel did not know the truth; (3) the false representation or concealment was made with the intent that it be relied upon; and (4) the person to whom the representation or concealment was made or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. *Tingley v. Harrison,* 125 Idaho 86, 90, 867 P.2d 960, 964 (1994). If any element is absent, the doctrine does not apply. *Id.; Tommerup v. Albertson's, Inc.,* 101 Idaho 1, 6, 607 P.2d 1055, 1060 (1980).

Here, the record shows that the elements of equitable estoppel were not present. First, regarding the respondents' knowledge of the claim against H & H, Figueroa contends that because the respondents were Figueroa's attorneys, they "are charged with constructive knowledge of the issue of H & H's liability" to Figueroa. We disagree. Constructive knowledge cannot be imputed to the respondents for purposes of equitable estoppel simply by virtue of their profession. This is particularly true in the instant case

where Figueroa maintained, under oath, by affidavit and in testimony, that Kit–San, not H & H, was responsible for the freight charges.

With respect to the second element, there was evidence presented that Figueroa knew the truth regarding the potential claim against Kit–San. It is an undisputed fact that Figueroa received a letter from Kit–San in May 1985 informing him that Kit–San was disclaiming any liability for the freight charges and that Figueroa should look to H & H for payment. In addition, the record contains no evidence that there was concealment of the claim against H & H with the intent that the concealment be relied upon. The record demonstrates that there was no genuine issue of material fact with respect to Figueroa's assertion of equitable estoppel. We conclude that the district court properly granted summary judgment with respect to Figueroa's argument based on the doctrine of equitable estoppel.

## CONCLUSION

We hold that Figueroa suffered some damage in 1988, when he lost the right to sue H & H due to the expiration of the statute of limitation on that claim. Therefore, the malpractice action against his attorney accrued at that point and expired more than two years before he brought his action against the respondents.

In addition, we conclude that there was no genuine issue of material fact regarding whether the respondents were barred by the doctrine of equitable estoppel from raising a defense based on the statute of limitation.

Accordingly, the order of the district court granting summary judgment to the respondents is affirmed. No attorney fees are awarded on appeal. Costs to respondents.

LANSING and PERRY, JJ., concur.